**Thomas J. WALSH, Jr., Plaintiff,**

v.

**LOCAL BOARD NO. 10, MOUNT VERNON, NEW YORK, Defendant.**

No. 69 Civ. 3534.

United States District Court
S. D. New York.

Oct. 22, 1969.

Valicenti, Leighton, Reid & Pine, New York City, for plaintiff; Malcolm Monroe, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, for defendant; Martin Paul Solomon, Asst. U. S. Atty., New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Petitioner, Thomas J. Walsh, Jr., moves pursuant to Rule 65, Fed.R.Civ.P., for a preliminary injunction restraining his induction into the United States armed forces until defendant, Local Board No. 10 of the Selective Service System (the draft board), properly determines his asserted right to a deferment.

The action is for a declaratory judgment of petitioner's right to a I–S(C) student deferment classification under the Military Selective Service Act of 1967 (the Act), 50 U.S.C. § 451 ff., and for an injunction directing the draft board to classify him as I–S(C), to reopen his case, to consider anew his request for a I–S(C) classification, and to restrain the draft board from enforcing its order directing petitioner to report for induction until, by due and proper proceedings, the draft board has determined that petitioner is not entitled to a I–S(C) classification.

Jurisdiction is based on 28 U.S.C. § 1331(a). The complaint alleges that the action arises under the laws of the United States and that the matter in controversy exceeds $10,000 in value.

Defendant argues that we lack jurisdiction because it is impossible to assign a monetary value to this kind of case and petitioner, therefore, cannot demonstrate the requisite jurisdictional amount.[1] Were we to accept defendant's argument, federal courts would never have jurisdiction over pre-induction cases, yet the Supreme Court and the Second Circuit have decided such cases thus implicitly recognizing jurisdiction.[2]

1. Boyd v. Clark, 287 F.Supp. 561 (S.D. N.Y.1968), aff'd, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (1969).

2. Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Breen v.

The jurisdictional amount requirement is intended to give the United States district courts jurisdiction in all "substantial controversies where other elements of Federal jurisdiction are present." [3] The controversy here concerning petitioner's alleged "blatantly lawless" draft classification and eventual induction into the armed forces is, to be sure, a substantial controversy, and, with an appropriate allegation coupled with judicial notice of the pecuniary rewards of a college education, we can assume, as the Supreme Court did in Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), that the amount involved exceeds $10,000. We turn, now, to the operative facts.

Petitioner is a full-time student at the University of Bridgeport, having commenced his junior year on September 23, 1968. He expects to receive his bachelor's degree in June 1970. Until December 12, 1969, the draft board classified petitioner as II–S, the usual student deferment classification granted to registrants who are "satisfactorily pursuing a full-time course of instruction" at a college or university.[4] Unfortunately, petitioner fell behind his class. He thereby lost his right to be continued in II–S because he was not "satisfactorily pursuing a full-time course of instruction" within the meaning of § 6(h) (1) of the Act.[5] Consequently, on December 12, 1968, the draft board reclassified him I–A, that is, available for military service. He appealed the reclassification, but it was upheld by the Appeals Board.

On June 10, 1969, the draft board ordered petitioner to report for induction on July 9, 1969. Petitioner did not, however, receive the notification until late in July. Earlier, on July 3, 1969, he had applied for a I–S(C) classification and had requested a personal appearance, but four days later, on July 7, 1969, without granting petitioner a personal appearance, the draft board notified him that his request was denied. Petitioner then applied to the State Director of Selective Service for an order directing the draft board to reopen and consider anew his request for a I–S(C) classification. The draft board stayed petitioner's induction pending the State Director's determination. The State Director denied petitioner's application on July 10, 1969, and the draft board reordered his induction for August 13, 1969. Petitioner then requested similar relief from the National Director, and his application was once again denied.

Petitioner claims that the draft board never considered his request for a reopening of his classification and for a I–S(C) deferment, because it was denied out of hand by the Board Chairman and the Executive Secretary in a telephone conversation, instead of by the entire board at a duly convened meeting. Procedural irregularities at the administrative level, however, may or may not be reviewable in the present posture of this case and, in any event, are immaterial to our decision.

Petitioner commenced this action on August 11, 1969 and brought on this application by order to show cause returnable August 12. We stayed petitioner's induction pending oral argument, and following oral argument on August 12 extended the stay pending final determination of the motion. Despite the stay, on the very next day, August 13, 1969, the draft board, at a regular meeting, implicitly branding its earlier procedures as irregular, finally considered petitioner's request for a reopening of his classification and for a I–S(C) deferment and, not surprisingly, denied his application.

Selective Service Local Bd. No. 16, 406 F.2d 636 (2d Cir. 1969).

3. S.Rep.No. 1830, 85th Cong., 2d Sess. (1958), 1958 U.S.Code Cong. & Admin. News, pp. 3099, 3101.

4. Section 6(h) (1) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 456(h) (1).

5. 32 C.F.R. § 1622.25(c).

Defendant argues that the draft board's meeting of August 13 constituted the exact relief petitioner seeks and, therefore, this motion for a preliminary injunction is moot. The argument is without merit.

Petitioner ultimately seeks broader relief than a preliminary injunction. He also seeks a declaratory judgment and other relief.

The provisional remedy of a preliminary injunction is equitable in nature and, even though the exact relief requested may no longer be necessary, the court, in its discretion, can and should fashion the preliminary restraint necessary to preserve the subject of the action and the *status quo* pending final determination. The draft board's impetuous disturbance of the *status quo* on August 13 flouts the spirit, if not the letter, of the court's temporary restraining order. Surely a court of equity is not ousted of jurisdiction over the subject matter of a pending suit, while considering a motion for a preliminary injunction, by the draft board's *nunc pro tunc* procedure in the face of a temporary restraining order.[6]

Our concern, however, is not with procedural irregularities, for, however abhorrent, they are immaterial in this case. Decision here turns on the applicable substantive law. The function of the temporary restraining order was to preserve the *status quo* pending decision of this motion. The preliminary injunction which petitioner seeks by the motion would restrain petitioner's induction into the armed forces and maintain the *status quo* pending a final determination of his legal right to a I–S(C) classification.

A preliminary injunction is granted, in the discretion of the court, when petitioner can demonstrate immediate and irreparable harm if the injunction is not granted and a substantial likelihood of ultimate success on the merits.[7]

█ Petitioner clearly establishes immediate and irreparable harm if the preliminary injunction is not granted, since he will be inducted forthwith into the United States armed forces, rendering futile his petition for declaratory judgment and permanent injunctive relief.

Whether petitioner demonstrates a substantial likelihood of success is a more difficult question. Petitioner can succeed only by demonstrating that defendant's action in denying his request for a I–S(C) classification was "blatantly lawless," otherwise petitioner cannot raise his claim for a I–S(C) classification except as a defense to a criminal prosecution for failure to report for induction or, after induction, by a writ of habeas corpus.[8] We turn, then, to the question of whether the draft board's denial of the requested classification was "blatantly lawless."

Classification I–S(C) is based on § 6(i) (2) of the Act,[9] which provides in pertinent part that:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the fact being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: *Provided,* That any person who * * * hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of in-

---

6. Porter, Price Adm'r v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).

7. Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966) ; H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13, 17 (2d Cir. 1963).

8. Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 460(b) (3).

9. 50 U.S.C.App. § 456(i) (2).

struction at a college, university, or similar institution of learning * * *." This section of the Act mandates a deferment for those registrants meeting its requirement, and if a deferment is denied to those properly falling within its purview, the draft board's denial would be "blatantly lawless," thus allowing preinduction review.[10]

■ Defendant does not dispute the fact that petitioner is a full-time student "satisfactorily pursuing a course of instruction" within the meaning of § 6(i) (2). Apparently defendant recognizes that the interpretation of "satisfactorily pursuing a course of instruction" must be broader under § 6(i) (2) than the "not falling behind the class" criteria under § 6(h) (1), otherwise undergraduate students would never qualify for a I–S(c) deferment under § 6(i) (2).[11] Those undergraduate students who progress with their class would be classified II–S under § 6(h) (1), and those who fall behind would be denied either a II–S classification under § 6(h) (1) or a I–S(C) classification under § 6(i) (2).

The regulations specifically deny the I–S(C) deferment to students who have previously been classified II–S and have already received a bachelor's degree.[12] If we were to suppose that congress never intended § 6(i) (2) to apply to undergraduate students, then it would only apply to those few graduate students who had received II–S deferments prior to the 1967 amendment. There is no justification in the statutory language for such a narrow application.

Plainly, then, congress intended by § 6(i) (2) to mandate I–S(C) deferment to undergraduate students who

had fallen behind their class but who were, nevertheless, "satisfactorily pursuing a full-time course of instruction" when ordered to report for induction. Thus, an undergraduate registrant is "satisfactorily pursuing a full-time course of instruction" under § 6(i) (2) if he meets the academic standards necessary to be accepted at, or to remain in, a full-time program at a college or university. Petitioner satisfies this requirement.

■ Defendant argues that petitioner is not entitled to a I–S(C) classification because he received his induction order during his summer vacation and not during an academic year. Unquestionably, the regulations do provide that a I–S(C) classification will only be granted to students who receive an induction order during an academic year.[13] "Academic year" is defined in the regulations applicable to the II–S classification as "the 12 month period following the beginning of his course of study."[14] Applying that definition to this case would entitle petitioner to a I–S(C) classification because he would have received his order of induction during his September 1968 to September 1969 academic year.

Defendant argues, however, that the 12-month academic year prescribed for a II–S deferment is a special exception necessitated because of the continuous nature of undergraduate education. The I–S(C) classification, defendant once again maintains, is essentially a graduate deferment and "academic year" used in reference to a I–S(C) does not mean one year from the beginning of the academic year, as in the case of a

---

10. Oestereich v. Selective Service System Local Bd. No. 11, *supra*; Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969); Carey v. Local Bd. No. 2, 412 F.2d 71 (2d Cir. 1969).

11. Petitioner was denied a II–S classification because, having fallen behind his class, he was not "satisfactorily pursuing a course of instruction" as required by

and within the meaning of § 6(h) (1), but not as required by and within the meaning of that phrase as used in § 6(i) (2).

12. 32 C.F.R. § 1622.15(b).

13. 32 C.F.R. § 1622.15(b).

14. 32 C.F.R. § 1622.25(b).

II–S classification, but means the nine-month period from September to June.

Neither the statute nor the regulations contain the slightest suggestion that "academic year" is to be defined differently for a I–S(C) classification than for a II–S classification. Moreover, defendant's argument that I–S(C) is essentially a graduate deferment conflicts with the plain language of § 6(i)(2) which excludes graduate students from a I–S(C) deferment except those remaining few who had received II–S deferments prior to the 1967 amendment.[15]

Petitioner was therefore entitled to a I–S(C) deferment because he received his induction order during an academic year which had commenced in September 1968 and which did not end until September 1969.

■ Petitioner has clearly demonstrated that defendant's denial of his request for a reopening of his classification and for a I–S(C) classification was "blatantly lawless." Moreover, petitioner will be immediately and irreparably harmed if the preliminary injunction is not granted. This is enough to warrant the preliminary injunction sought and ordinarily our consideration would end here. We are mindful that it is not usually our function on a motion for a preliminary injunction to determine the final rights of the parties. Here, however, there are no genuine issues as to any material fact requiring either an evidentiary hearing or a trial on the merits, and petitioner's motion, therefore, will be treated as an applica-

tion for summary judgment granting plenary relief on the merits.

■ Petitioner was entitled to a I–S(C) classification on July 3, 1969, the day he applied for reclassification. The draft board's denial of his application violated its own regulations and petitioner's right to procedural due process, rendering invalid the induction order of June 10, 1969.[16]

The draft board's overzealous, high-handed and erroneous handling of this young man's plight hardly inspires confidence in the system. Rather, it is this kind of mistreatment which has alienated the youth of the nation, bred disrespect for law, sparked the disorders which have torn a gap between generations and ripped open the very structure of society. It feeds the clamor for abolition of the whole selective service system, from top to bottom, not only by mounting numbers of defiant young men, but also by the President and many members of congress, where no less than 43 bills to change the draft law are pending.[17] At the very least, those entrusted with the awful power of conscripting the nation's young men into the armed forces in time of war or other military venture owe a duty of the most searching examination of the facts, scrupulous fairness, sensitive care, compassionate hearing, patient consideration, cautious action and deliberate and rational decision within the law. We afford no less to the worst criminal in our society.

Accordingly, the order of induction dated June 10, 1969 is vacated, and de-

15. Marsano v. Laird, *supra*; Carey v. Local Bd. No. 2, *supra*.

16. United States v. Vincelli, 215 F.2d 210, 213 (2d Cir. 1954); United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966).

17. "Meanwhile, the active opposition to the draft across the nation is growing rapidly, as reflected in figures compiled by the Department of Justice.
"On July 1, the beginning of the new fiscal year, some 2,958 criminal cases

were pending in Federal courts involving alleged violations of the conscription law, representing roughly 15 per cent of all criminal cases pending in these courts.
"The percentage is almost twice as large as in the fiscal year 1968, when 884 defendants were convicted of violating the Selective Service Act.

"In addition to the pending cases, more than 5,000 'delinquencies' are under investigation to determine if there is any basis for prosecution." N.Y. Times, Aug. 17, 1969, p. 9, col. 1.

fendant is permanently enjoined from inducting petitioner into the armed forces under the June 10, 1969 induction order.

The foregoing opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52(a), Fed.R.Civ.P.

Submit judgment in accordance with the foregoing within ten (10) days.