Patrick **KEOHANE**, Plaintiff-Appellant,

v.

The **NEW YORK CENTRAL RAILROAD COMPANY**, Defendant-Respondent.

No. 35, Docket 33215.

United States Court of Appeals
Second Circuit.

Argued Sept. 16, 1969.

Decided Nov. 10, 1969.

Paul A. Victor, New York City (Tobias A. Russo, New York City, of counsel; Caiola & Victor, New York City), for appellant.

Joseph Arthur Cohen, New York City (Sidney A. Schwartz, of counsel; Alexander, Ash & Schwartz, New York City), for respondent.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff, Patrick Keohane, brought this action in the United States District Court for the Southern District of New York pursuant to the Federal Employers Liability Act, 45 U.S.C. § 51 et seq. (1964), for an injury he allegedly sustained while working for defendant, New York Central Railroad Company, as a mail handler and elevator operator in

---

4. The law is not clear in this area as shown in the cases cited in note 2, *supra*.

Grand Central Terminal. Judgment was entered in favor of defendant after a jury trial held solely on the issue of liability.[1] Plaintiff appeals on the following grounds: (1) exclusion of certain testimony; (2) admission into evidence of a report of the accident; (3) splitting of the trial between the issues of damage and liability; (4) failure of the trial court to inform counsel of its proposed action with respect to his requests to charge; and (5) intemperate conduct of the trial judge which prevented plaintiff from receiving a fair and impartial trial.

We reverse on the basis of plaintiff's first contention—the exclusion of certain testimony.

## I.

Plaintiff was employed by the defendant as a mail handler and elevator operator. He was assigned to work on Track 14 and on an elevator commonly referred to as the "Queen" elevator, which was adjacent to Track 14. His work called for him to load skids with mail from a chute located above Track 14; and then to roll the loaded skid approximately 54 feet to the Queen elevator. He would then put the skid on the elevator. The doors of the Queen elevator recess into the ceiling and the floor rather than opening to the side. Appellant would next operate the elevator so as to ascend to the Post Office located in the Grand Central Terminal where he left the loaded skid. He returned by means of the same elevator, sometimes with an empty skid, and repeated the operation. On his work shift plaintiff was the only man to work on this particular track with this particular elevator.

Plaintiff testified that on the day of the accident "something"[2] caused the T-Bar of the skid to swing to the left as he was pulling the skid into the elevator. He felt a severe sting in his right hip. He claimed to be disabled by the injury and never returned to the job. There were no witnesses to the accident other than the plaintiff himself.

The defense called no witnesses. It introduced into evidence certain statements made by the plaintiff to its agent shortly after the accident, and a report of the accident.

## II.

Plaintiff's case depended on convincing the jury that the accident indeed occurred, and that it resulted from a defective condition of the elevator caused by defendant's negligence.[3] Plaintiff attempted to show that the elevator was operating defectively both before and after the accident, and, thus, by inference, at the time of the accident. To this end, plaintiff called three witnesses familiar in varying degrees and in varying capacities with the elevator area.

Samuel S. Aidlin, a professional engineer, was duly qualified as an expert witness on elevators. He attempted to describe the conditions he observed when he examined the elevator area some 18 months after the alleged accident and was prepared to state, as an expert, approximately how long these conditions existed. The trial judge sustained a motion to strike Aidlin's testimony as to his findings, possibly on the ground that

1. During the direct examination of plaintiff the trial judge ordered the case tried only on the issue of liability since plaintiff's medical witness would not be available to testify until the following afternoon.

2. On direct examination plaintiff testified that "the wheel got stuck on the door going in." On cross-examination plaintiff indicated that the elevator "went down a quarter of an inch and the wheel hit against the door." Thus plaintiff appeared to be unsure whether there was a

defect which caused the door to extend above or drop below the spot where the elevator met the surface. It seems possible, though this is certainly not clearly established by the evidence, that what the plaintiff meant to say was that the edge of the door was askew, with one end below the surface of the floor and the other end above.

3. Plaintiff also tried to show that one man was not sufficient for the job. Prior to 1965 it had been done by two men.

what he found differed from what the plaintiff testified had caused the accident.[4] In an attempt to cure whatever defect the trial judge found in Aidlin's initial testimony, counsel asked the witness what he observed "with reference only to the elevator door" and "with reference only to the markings on the top of the door." Defendant's objection was sustained in both instances. Since the only description Aidlin was permitted to make of the area was stricken, there was no occasion for him to state how long he thought the defects he discovered had existed.

Fred Barlow, an employee of defendant for 29 years, had operated the elevator in question some five years before the accident and returned to operate it approximately four months after the accident. Counsel's questions to Barlow were quite inartistic, and he was forced to make a formal offer of proof at side bar. Counsel stated:

"This condition that prevailed, that showed in this picture, has prevailed when he was working at that time, and it is currently there, has never been fixed, and I am trying to show it has prevailed for five years. It was there before the accident, during the accident and after the accident."

He then asked Barlow if he was familiar with the condition of the elevator on the date of the accident. Barlow stated that he was, but counsel failed to ask him to describe the conditions. After a few more questions the trial judge apparently took it upon himself to dismiss the witness.[5]

4. Aidlin testified that the door opened so that it would stop ¼ to ¾ of an inch below the adjoining surface on one side. He stated that this condition might cause one wheel of the skid to get caught which could then swing the rest of the skid around.

5. The following excerpt from the record shows the colloquy which led to Barlow's dismissal as a witness:

The Court: * * *
Unless you start putting relevant questions the Court will be required to remove the witness.
Mr. Victor: Your Honor, the relevancy of these questions—
The Court: I heard your argument. I won't take argument now. Proceed. Ask questions. But unless you start putting some over the plate we are going to put somebody else in the box.
Q. Mr. Barlow, were you familiar with the condition of the Queen elevator on May 15th of 1965? A. Yes.
Q. Was the condition that prevailed on May 15, 1965, the condition that presently prevails?
Mr. Cohen: I am going to object unless we get a foundation for this, if your Honor please.
The Court: Yes, sustained.
Q. Mr. Barlow, the condition that prevailed on May 15, 1965, is that the same condition which you observed five years prior thereto?
Mr. Cohen: Objection.
The Court: Sustained.
Q. Have you observed this condition, Mr. Barlow?

Mr. Cohen: Same objection.
The Court: Sustained.
Q. Mr. Barlow, was this the condition that prevailed on May 15, 1965?
Mr. Cohen: Objection.
The Court: Sustained.
Q. Mr. Barlow, I ask you to describe what you see in Exhibit 7.
The Court: Sustained.
Mr. Cohen: Objection.
The Court: All right, you may step down, Mr. Barlow.
(Witness excused.)
The Court: Next witness, unless you have some cross-examination.
Mr. Cohen: No, sir.
The Court: Next witness.
Mr. Victor: I am calling the next witness, your Honor.

It is not clear from this testimony whether plaintiff's counsel was finished with the direct examination of Barlow. He did not protest the action of the trial judge and the briefs submitted to this court shed no light on the bare record. Because of the ambiguous state of the record and counsel's apparent acquiescence, we do not consider this point to be before us. We note however, that on the facts of this case, where the evidence that counsel was attempting to elicit from the witness was highly relevant, and where the judge was aware of the nature of that testimony from counsel's formal offer of proof, the use of the trial judge's inherent power to question the witness or an instruction to counsel at side bar as to the proper form for his questions would have been preferable to summary dismissal of the witness.

Frank J. Schneider was a foreman and a relief assistant foreman employed by defendant since 1939. He testified that he was familiar with the elevator area and described the conditions he observed on the day that the accident took place. He said that the elevator area was "much pitted" and "bumpy." He described the defective condition as follows: "the elevator sags a bit and readjusts itself and comes up, and sometimes the door jumps up an inch or two while the elevator comes up an inch." At the end of his testimony, the trial judge ordered all of Schneider's testimony stricken.

■ The judge instructed the jury: "Essentially this case turns on the testimony of one witness: the plaintiff, Mr. Keohane. There wasn't one other bit of relevant evidence from the witness stand."

Counsel did not object to this instruction; therefore under Rule 51, Federal Rules of Civil Procedure, we do not consider it to constitute reversible error. However, it indicates the result of the judge's striking relevant testimony.

### III.

The testimony of the three witnesses concerning the condition of the elevator should have been admitted. Aidlin's testimony corroborated plaintiff's contention that the elevator operated in a defective manner. Barlow's testimony also supported plaintiff's contention that the elevator was defective. From his testimony as to his prior experience with the elevator the jury could have found that the defect existed for some time before Keohane's accident, and that the defendant had or should have had notice of the elevator's defective condition. Schneider's testimony also would have served to aid plaintiff's case.

■■ When the state of an object at a particular time is at issue, evidence of its condition before and after that time is relevant.

"When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of

it is in human experience some indication of its probable persistence or continuance *at a later period.* * * * Similar considerations affect the use of *subsequent existence* as evidence of existence at the time in issue." 2 Wigmore, Evidence § 437 (3d ed. 1940).

"But in our opinion the trial court erred in a matter of law in failing to consider and apply the evidentiary principle that the subsequent existence of a fact supports the inference of its earlier existence, when the subsequent condition is one which ordinarily would not exist unless it had also existed at the earlier time." United States v. Consolidated Laundries Corp., 291 F. 2d 563, 569 (2d Cir. 1961).

See Lebrecht v. Bethlehem Steel Corp., 402 F.2d 585, 592 (2d Cir. 1968); Manning v. New York Telephone Co., 388 F.2d 910, 912 (2d Cir. 1968); Berwind White Coal Mining Co. v. City of New York, 48 F.2d 105, 107 (2d Cir. 1931).

### IV.

■ Since the issue may arise on the new trial we will also rule on plaintiff's objection to the admission of an accident report. The admission of the report was not error. It was properly admitted under the Federal Business Records Act, 28 U.S.C. § 1732 (1964). Taylor v. Baltimore & Ohio Railroad, 344 F.2d 281 (2d Cir.), cert. denied, 382 U.S. 831, 86 S.Ct. 72, 15 L.Ed.2d 75 (1965); United States v. New York Foreign Trade Zone Operators, 304 F.2d 792 (2d Cir. 1962).

The failure of the judge to rule on counsel's request to charge will presumably not be repeated at the new trial. Rule 51 of the Federal Rules of Civil Procedure.

Insofar as plaintiff's appeal is based upon the "intemperate" conduct of the trial judge, we can perhaps do no better than quote the following from an opinion recently rendered in the case of Walsh v. Local Board No. 10, Mount Vernon, New York, 305 F.Supp. 1274 (D.C.1969):

"At the very least, those entrusted with the awful power of conscripting

**482**

the nation's young men into the armed forces in time of war or other military venture, owe a duty of the most searching examination of the facts, scrupulous fairness, sensitive care, compassionate hearing, patient consideration, cautious action and deliberate and rational decision within the law. We afford no less to the worst criminal in our society."

305 F.Supp. at 1279.

If this standard of conduct is to be required of draft boards, how much more demanding must be the standard required of federal judges!

The other rulings as to which plaintiff assigns error are not likely to arise at a new trial.

Reversed and remanded for a new trial.