446 F.2d 1079
 UNITED STATES of America ex rel. Joseph VACCA, Jr.,
Detainee, Petitioner-Appellant,
v.
COMMANDING OFFICER, FT. HAMILTON, UNITED STATES ARMED FORCES
EXAMINATION AND ENTRANCE STATION, BROOKLYN, NEW
YORK, Custodian of Joseph Vacca, Jr.,
Respondent-Appellee.
 No. 778, Docket 71-1031.
 United States Court of Appeals, Second Circuit.
 Argued March 17, 1971.
Decided May 20, 1971.
 
 1
 Henry Mark Holzer, New York City (Erika Holzer, New York City, on the brief), for petitioner-appellant.
 
 
 2
 Cyril Hyman, Asst. U.S. Atty., Brooklyn, N.Y. (Edward R. Neaher, U.S. Atty., on the brief), for respondent-appellee.
 
 
 3
 Before MOORE and SMITH, Circuit Judges, and TIMBERS, District Judge.*
 
 TIMBERS, District Judge:
 
 4
 Appellant Vacca, having been inducted into the Armed Forces of the United States on December 22, 1970 and on the same day having filed a petition for a writ of habeas corpus claiming he was being unlawfully detained pursuant to an order for induction issued by his local board in violation of the Military Selective Service Act of 1967, 50 U.S.C. App. 451, et seq. (Supp. V, 1965-69), appeals from an order entered January 8, 1971, after a hearing in the United States District Court for the Eastern District of New York, John F. Dooling, Jr., District Judge, dismissing his petition for a writ of habeas corpus. For reasons stated below, we do not reach the issues raised by appellant in the District Court or in this Court; but, on the basis of our independent examination of the record, we find plain error to have been committed by the local board on April 23, 1979, in postponing appellant's induction until the end of the academic year, rather than reclassifying him I-S(C) as required by 32 CFR 1622.15(b) (1969). Accordingly, we remand with instructions that the order of the District Court be vacated and that the writ issue.
 
 I.
 
 5
 The relevant classification history of appellant may be summarized as follows:
 
 
 6
 (1) On April 4, 1967, shortly after his eighteenth birthday (he was born February 5, 1949), appellant was classified I-A by his local board. At that time he had graduated from high school and was employed at a full-time job.
 
 
 7
 (2) On January 20, 1968, appellant wrote to his board notifying it that he had taken courses worth 5 semester hours of credit at Queens College the previous fall and was enrolled in courses worth 12 semester hours for the spring semester. He asked the board to 'review his present status.' The board took no action on appellant's request.
 
 
 8
 (3) In September, and again in December, 1968, appellant further notified his board that he continued to be enrolled in 12 semester hours of courses at Queens College. The record indicates that this is considered by the College to be a full-time course load, although appellant continued to be employed at a full-time job and attending the College in the evening. Appellant, however, was not a matriculated student.
 
 
 9
 (4) On February 5, 1969, the board sent appellant a letter stating that it had reviewed his file and that the evidence which he had submitted 'does not justify the re-opening of your case.'
 
 
 10
 (5) On April 11, 1969, the board issued an induction order for appellant to report on April 29, 1969. Attached to the induction order was a statement (set forth in full and discussed below) advising appellant that the induction order would be cancelled and he would be classified I-S(C) to the end of his academic year if the board received prior to April 17, 1969 a certification from his school that he was a full-time student and was satisfactorily pursuing his studies.
 
 
 11
 (6) On April 14, 1969, the board received the certification from Queens College that he was enrolled in 12 semester hours and that this was considered a full-time course of study.
 
 
 12
 (7) On April 23, 1969, the board entered in its records the notation that appellant was not entitled to a I-S(C) since 'he is a part time night student'; but the board did postpone his induction to the June call.
 
 
 13
 (8) On June 9, 1969, the board ordered appellant to report for induction on June 25, 1969.
 
 
 14
 (9) On June 18, 1969, the board received a request from appellant for a conscientious objector application form. Upon receipt of this request, the board further postponed appellant's induction.
 
 
 15
 (10) On July 24, 1969, the board held a 'courtesy interview' with appellant to discuss his conscientious objector application. At the conclusion of the interview, the board noted in its records: 'No change in status. Regist to report for induction. Not sincere in his conviction as a C.O.'
 
 
 16
 (11) On December 22, 1970, after delays not relevant to the instant case,[1] appellant submitted to induction and immediately filed the present habeas corpus petition.
 
 II.
 
 17
 The essential claims raised by appellant in the, district Court and on appeal in this Court are (1) that the local board erroneously refused to reopen his I-A classification in response to repeated requests for a II-S deferment, and (2) that the local board erroneously refused to reopen his I-A classification in respone to a post-induction order conscientious objector claim.
 
 
 18
 After a two day evidentiary hearing, Judge Dooling dictated his findings on the record and thereafter filed a reasoned opinion; he rejected appellant's claims and dismissed the petition.
 
 
 19
 In view of the ground of our decision below, we find it neither necessary nor appropriate to rule upon the issues raise by appellant in the District Court and in this Court.[2]
 
 III.
 
 20
 Focusin upon the events of April 1969 (paragraphs (5), (6) and (7) of appellant's classification history, set forth above), we find that appellant at that time remained classified I-A as he had been continuously during the two year period since his registration, despite repeated requests that the board review his file and grant him a II-S deferment.
 
 
 21
 , on April 11, 1969, the board sent its first induction order to appellant, ordering him to report for induction on April 29, 1969. The board attached the following statement to its April 11 induction order:
 
 
 22
 'The attached Order to Report for Induction (SSS Form No. 252) is merely an administrative process to the statutory classification of I-S(C) for full time students. IF YOU ARE A FULL TIME STUDENT, YOUR SCHOOL MUST SUBMIT CERTIFICATION OF YOUR STATUS TO THIS LOCAL BOARD IMMEDIATELY, STATING THAT YOU ARE SATISFACTORILY PURSUING YOUR STUDIES. At the next meeting of this Local Board, this order will be cancelled and you will be classified I-S(C) to the end of your academic year at school. PROVIDED THE ABOVE MENTIONED CERTIFICATION IS RECEIVED FROM YOUR SCHOOL AT THE LOCAL BOARD OFFICE ON OR BEFORE APRIL 17, 1969.'
 
 
 23
 On April 14, 1969, the board received the following certification from Queens College:
 
 
 24
 'This is to inform you that Mr. Joseph Vacca is currently enrolled 12 credits at Queens College for the Spring 1969 semester. Twelve credits is considered a full-time course of study.'
 
 
 25
 On April 23, 1969, the board notified appellant that his induction 'is hereby POSTPONED until June, 1969 call.' This notice was sent on the same day the board received from appellant a letter stating, 'I am presently enrolled has a non-matriculated student at Queens College. I am taking 12 credits, which is considered full time . . .' And on the same day, there was entered in appellant's file at the board the following notation of a telephone call from Colonel Alpert of the New York City Selective Service System:
 
 
 26
 'Call received from Colonel Alpert postponement of induction granted until end of semester. Registrant does not qualify for a I-SC as he is a part time night student. Instructed to put on bottom of Postponement that 'Postponement is given to complete this semester no further postponement will be considered."
 
 
 27
 The statement which the board attached to its April 11 induction order was in compliance with Section 1622.15(b) of the Selective Service Regulations (32 CFR 1622.15(b) (1969)):
 
 
 28
 'In Class I-S shall be placed any registrant who while satsfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning and during his academic year at such institution is ordered to report for induction, except that no registrant shall be placed in Class I-S under the provisions of this paragraph
 
 
 29
 (1) who has previously been placed in Class I-S thereunder or
 
 
 30
 (2) who has been deferred as a student in Class II-S and has received his baccalaureate degree.
 
 
 31
 A registrant who is placed in Class I-S under the provision of this paragraph shall be retained in Class I-S
 
 
 32
 (1) until the end of his academic year or(2) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier.'
 
 
 33
 The last paragraph of Section 1622.15(b) provides that this I-S class shall be identified on the board records as Class I-S(C), referring to college student deferred by statute.
 
 
 34
 Once the board sent appellant an induction order and then received the certification from his College that he was a full-time student, clearly it was mandatory under the regulation for the board to place him in Class I-S(C) until the end of the academic year, since he had not previously been placed in Class I-S nor had he been deferred as a student in Class II-S followed by receipt of his baccalaureate degree. The fact that the board postponed his induction until the end on the academic year obviously is not an acceptable substitute, under the regulation, for the I-S(C) classification; for if the I-S(C) classification had been granted, then when it expired in June the board would have been required to reclassify appellant I-A, at which point there would have accrued the normal rights to a personal appearance and appeal (32 CFR 1625.13 (1969)). In this case the difference between postponement and reclassification was not academic; it was the difference between being drafted and not being drafted.[3]
 
 
 35
 We hold that the board's postponement of appellant's induction, rather than reclassifying him I-S(C) as required by the regulation, was plain error, rendering his induction into the Armed Forces invalid and his present detention unlawful. He is entitled to be discharged. Accordingly, we remand with instructions that the District Court's order of January 8, 1971 dismissing appellant's petition be vacated and that the writ issue.
 
 
 36
 Having reached the conclusion which we believe the record requires, we cannot refrain from recording our displeasure with the result. For we are not insensitive to the 'noisome odors'[4] emanating from the conduct of this appellant in avoiding the draft. See, e.g., note 1, supra. Nevertheless, as long as the youth of this Nation are being drafted for military service, the statute and regulations must be followed meticulously; the boards and the courts must turn square corners. Here, in the one instnace indicated, the board did not.[5]
 
 
 37
 By this opinion we do not express or imply any view as to what further action, if any, the board may take according to law with respect to this appellant, now 22 years of age.
 
 
 38
 In remanding, we have not overlooked the alternative of directing the District Court to make its own determination, after a further hearing if necessary, upon the issue we find to be controlling, especially since that issue was not raised in the District Court initially. Such a direction, we have concluded, would be pointless in view of the record.
 
 
 39
 In accordance with the agreement of counsel on both sides at the time of argument, we order that the mandate issue forthwith.
 
 
 40
 Remanded with instructions.
 
 
 41
 MOORE, Circuit Judge (concurring in part and dissenting in part):
 
 
 42
 Although I agree with the basis of the majority's decision today (i.e., that Vacca's local board may have improperly denied him a I-S(C) deferment), I must disagree with its disposition of the case, insofar as instruction to the district court is concerned. Rather than order that the habeas corpus writ issue, I would remand the case to the district court for a hearing to determine whether Vacca in fact met the statutory and regulatory requirements[1] for a I-S(C) classification.
 
 
 43
 The applicable requirements of 50 U.S.C. App. 456(i)(2) are as follows:
 
 
 44
 'Any person who while satisfactorily pursuing a full-time course of instruction at a college * * * shall, upon the facts being presented to the local board, be deferred * * * until the end of the academic year * * *.'[2]
 
 
 45
 The only favorable data in the record bearing on the I-S(C) question are the claims of Vacca and the Assistant Registrar of Queens College that in the spring of 1969 (when he received his induction order Vacca was enrolled at Queens College and carrying a 12-hour course load, which the assistant Registrar characterized as a 'full-time course of study.' No mention is made by the Queens College official of whether Vacca was 'satisfactorily pursuing a full-time course of in struction' at that institution as of the time he received his induction order; and there is nothing in the record to indicate that the court below was presented with an opportunity to consider this important question of a clearly factual nature.
 
 
 46
 Neither the applicable statute nor regulation defines what is meant by 'satisfactorily pursuing a full-time course of instruction.' The majority apparently has concluded ipse dixit[3] that mere enrollment for a 'full-time' load, as evidenced here especially by the Queens College letter of April 14, 1969, is enough to satisfy the applicable requirements for a I-S(C) deferment. It is with this conclusion that I must take serious issue.
 
 
 47
 Because the question whether a registrant is qualified for a I-S(C) deferment is one ultimately for the local board[4] or, as here, for a district court (and therefore not for the registrant's college or university), and because a college or university is at least initially best able to determine the quality of academic performance of a Selective Service registrant enrolled at that institution, it would be most reasonable, all factors considered, to accord prima facie rather than final effect, on the issue of satisfaction of the applicable statutory requirements of the I-S(C) classification, to an educational institution's official letter stating a registrant's full-time enrollment.[5] Such a rule would be fair to all parties concerned: it would give the registrant an evidentiary helping hand at the outset; it would permit the Government to come in with any evidence to rebut the prima facie case; and, finally, it would allow the court to consider all the relevant facts bearing on the I-S(C) question.
 
 
 
 *
 Chief Judge of the District of Connecticut sitting by designation
 
 
 [1]
 The 17 month delay between the board's courtesy interview with appellant on July 24, 1969 and his induction on December 22, 1970 is accounted for in part by his indictment on January 29, 1970 for refusing to submit to induction on August 4, 1969 as directed by the board on July 25, 1969. Before the trial of the criminal action began, apparently appellant submitted himself for induction and then immediately commenced the instant habeas corpus action
 
 
 [2]
 For example, a ruling on claim (2) would require a determination whether the standards for reopening a registrant's classification set forth in Mulloy v. United States, 398 U.S. 410, 415-16 (1970), apply to a post-induction order C.O. claim; and that determination in turn would involve a review of this Court's pre-Mulloy opinions on the distinction, if any, between the standards to be applied to pre-induction and post-induction C.O. claims. See, e.g., Paszel v. Laird, 426 F.2d 1169, 1174 (2 Cir. 1970). We believe that a ruling on that issue is better left to a case where the ruling would be controlling rather than dictum
 
 
 [3]
 We were informed at the time of argument that appellant's draft number was such that, had he been accorded the rights to which we hold he was entitled in the spring of 1969, he would not have been drafted pursuant to the April 11, 1969 induction order
 
 
 [4]
 Cf. United States v. Bradwell, 388 F.2d 619, 622 (2 Cir.), cert. denied, 393 U.S. 867 (1968)
 
 
 [5]
 In fairness to the board, its erroneous action in refusing to reclassify appellant I-S(C) may have stemmed from its assumption that, having denied his repeated requests for a II-S deferment, it consistently was required likewise to deny a I-S(C) classification. But the criteria for, as well as the purpose to be served by, a II-S deferment (32 CFR 1625.25(a) and (c) (1969)) are significantly different from a I-S(C) classfication (32 CFR 1622.15(b) (1969). See Walsh v. Local Board No. 10, 305 F.Supp. 1274, 1276-79 (S.D.N.Y.1969). Specifically, in order to qualify for a II-S deferment, the applicable regulation requires a showing (a) that the registrant is a matriculated student and (c) that he has maintained a pro rata progression toward a degree; the absence of these requirements from the applicable regulation for a I-S(C) classification strongly indicates they are not prerequisites for that classification. See Nowak v. Collins, 437 F.2d 1303, 1306-08 (3 Cir. 1971)
 
 
 [1]
 50 U.S.C. App. 456(i)(2); 32 C.F.R. 1622.15(b) (1971)
 
 
 [2]
 To the same effect, see 32 C.F.R. 1622.15(b) (1971)
 
 
 [3]
 Perhaps the majority has relied for its conclusion on the following dictum in Walsh v. Local Bd. No. 10, 305 F.Supp. 1274, 1278 (S.D.N.Y.1969) cited in the majority's opinion for another proposition
 'An undergraduate registrant is 'satisfactorily pursuing a full-time course of instruction' under 6(i)(2) if he meets the academic standards necessary to be accepted at, or to remain in, a full-time program at a college or university.'
 This court is certainly not bound by the above-quoted statement, particularly if it be taken to mean-- which is at the most arguable-- that a letter from a registrant's college or university indicating full-time enrollment of the registrant at that institution conclusively establishes by implication satisfactory performance by the registrant in all full-time course work.
 
 
 [4]
 See, e.g., Coleman v. New York Local Selective Service Bd. No. 61, 432 F.2d 225 (10th Cir. 1970) (per curiam)
 
 
 [5]
 Cf. Nowak v. Collins, 437 F.2d 1303, 1308 (3d Cir. 1971)