Laurs James **WILLIAMS** and John
Two Stars, Plaintiffs,

v.

**SISSETON–WAHPETON SIOUX TRIB-
AL COUNCIL et al., Defendants.**

No. Civ. 75–1001.

United States District Court,
D. South Dakota, N. D.

Jan. 30, 1975.

Order accordingly.

Rory King, Aberdeen, S. D., for plaintiffs.

Julian H. Brown, Mitchell, S. D., and Jane Bickford, Bismarck, N. D., for defendants.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This action challenges a tribal election on the Sisseton-Wahpeton Lake Traverse Indian reservation. Resolution of the challenge must be through application of the Indian Civil Rights Act.[1] Plaintiffs allege a denial of liberty or property without due process of law.

## BACKGROUND

The background of plaintiff Williams' claim is fascinating. In a mid-October, 1974, primary election, plaintiff Williams, Vernon Cloud, and another candidate ran for the position of tribal secretary. Plaintiff Williams received the least votes and, therefore, was eliminated from the general election race. Sub-

1. For an excellent presentation of two divergent views on the proper judicial application of the Indian Civil Rights Act see Ziontz, "In Defense of Tribal Sovereignty: An Analysis of Judicial Error in Construction of the Indian Civil Rights Act," 20 S.D.L.Rev. 1 (1975), and deRaismes, "The Indian Civil Rights Act of 1968 and the Pursuit of Responsible Tribal Self-Government," 20 S.D.L.Rev. 59 (1975).

sequent to the primary election, Williams alleges, he learned that Vernon Cloud had pleaded guilty to a felony charge and, therefore, was ineligible under the tribal election ordinance to seek or hold a tribal office. He took this information to Maynard Bernard, the chief tribal judge. It is also alleged that Bernard informed the tribal chairman that Cloud's name should be removed from the ballot. The election, however, proceeded with Cloud's name remaining on the ballot.

On November 5th, the day of the election, Chief Judge Bernard issued a restraining order to the tribal election board that was to restrain the counting of all ballots until November 14th, when a hearing on Cloud's eligibility would be held. The tribal council voted to overrule the restraining order and all ballots were counted. Cloud received the greatest number of votes for tribal secretary, but, because of the uncertainty over his eligibility, the results of the secretary election were not certified by the tribal council. Bernard was also elected chief tribal judge at the November 5th election. The results of this race were certified by the tribal council. On November 9, 1974, Bernard issued arrest warrants for the council members who had voted to overrule his restraining order of November 5th. The tribal council voted these warrants invalid at a meeting on November 12th.

Also at the November 12th meeting, the tribal council voted to hold a new election for secretary, and discussed suspending Chief Judge Bernard. Bernard, apparently, decided to resign rather than be suspended. The tribal council allegedly appointed a new chief judge at a December 4, 1974, meeting.

The second election for tribal secretary was set for December 21, 1974, and notices of the election were published in three newspapers.[2] The final filing date

was set for December 7, 1974. Plaintiff Williams did not file in this election. Vernon Cloud was the only candidate remaining on December 7th and was declared, on a date not in the record, to be tribal secretary. On December 6th, Cloud had been formally released from his probation.

The background of plaintiff Two Stars' claim is not so complicated. He ran for tribal treasurer against Clayton Adam. The first count of the ballots showed Two Stars winning, 278–277. Adam asked for and was granted a "recount." Four absentee ballots were invalidated by this "recount" procedure and Adam then had the most votes, 276–275. Two Stars moved to certify the recount results, and they were certified on November 5, 1974. Two Stars subsequently informed the tribal council, at a meeting on November 12, 1974, that he intended to challenge the election for treasurer.

Plaintiffs seek to enjoin defendants and their agents from implementing the results of the November 5th election for the tribal executive offices (president, secretary, and treasurer). Plaintiffs also seek a new election to fill these positions, and $20,000 damages.

This court granted a temporary restraining order on January 3, 1975, restraining defendants from implementing the results of the tribal secretary and treasurer elections. A consolidated hearing on the motion for a temporary injunction and trial on the merits of the permanent injunction was held on January 10, 1975. It was agreed by counsel for both parties that the hearing should be continued to allow submission of briefs, stipulation of undisputed facts, and a determination by the court as to whether a further evidentiary hearing was necessary. The temporary restraining order was extended by agreement of the parties to January 29, 1975. Stipu-

2. The notices were published in the Watertown Public Opinion of November 29, 1974, the Sota Eya Ye Yapi (a supplement to the Sisseton Courier) of November 28, 1974, and in the Sisseton Courier of November 21, 1974. The record does not reveal the contents of these notices.

lations having been entered into, briefs having been submitted, and the presentation of further evidence on the only question requiring further evidence having been waived, the court's decision follows.

## JURISDICTION

The first question the court must address in any action is whether the court has jurisdiction to entertain the action. Plaintiffs allege that 42 U.S.C. § 1983 and 25 U.S.C. § 1302(8) provide a substantive base for their action and that 28 U.S.C. § 1343(3) and (4) provide a jurisdictional base. Only the allegations of 25 U.S.C. § 1302(8) [3] and 28 U.S.C. § 1343(4) [4] have merit.[5] With respect to an action brought under these sections, the Eighth Circuit Court of Appeals has said:

> In our opinion, 28 U.S.C. § 1343(4) gives the district court jurisdiction to determine, in a *proper case*, whether an Indian tribe has denied to one of its members any of the rights given to the members under the Indian Bill of Rights. (emphasis added.)

Luxon v. Rosebud Sioux Tribe of South Dakota, 455 F.2d 698, 700 (8th Cir. 1972). This court is bound by that holding.

The next step is to determine whether this is a "proper case" in which to exercise jurisdiction. This court believes that a proper case is one in which the plaintiffs have sufficiently alleged a deprivation of a right guaranteed by the Indian Bill of Rights, and have fulfilled the general exhaustion-of-tribal-remedies requirement set forth in O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140, 1146 (8th Cir. 1973). Plaintiffs have sufficiently alleged a denial of liberty or property without due process of law. "Due process" is guaranteed by section 1302(8), therefore plaintiffs have met the initial jurisdictional requirement.

Defendants' brief puts forth a list of remedies that plaintiffs have, or had, available to them. They may be summarized and grouped as follows: 1) running in the December 21st tribal election (applicable only to plaintiff Williams); 2) filing a complaint with the tribal election board; 3) filing complaints with the tribal council; 4) filing complaints with the tribal court system; and 5) petitioning for a recall election.

The court states that it finds defendants' first suggested remedy to be without merit. For reasons detailed later in this opinion, the election of December 21st was not conducted, in this court's view, in compliance with the election ordinance and must be set aside. Furthermore, plaintiff Williams cannot turn the calendar back and comply with defendants' contention. Therefore, to hold in favor of defendants on this point would automatically and forever preclude plaintiff Williams from challenging the November 5th election. This the court declines to do.

Defendants' second and third groups of contentions, that plaintiffs could have approached the tribal election board and the tribal council, are equally without merit. The body to be petitioned would be the same body challenged in this action, and attempts to deal with those bodies have been futile. Therefore, exhaustion is unnecessary. McCurdy v.

---

3.  25 U.S.C. § 1302(8) provides:
    No Indian tribe in exercising powers of self-government shall—

    .        .        .        .        .

    (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;

4.  28 U.S.C. § 1343(4) provides:
    The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

.        .        .        .        .

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

5.  "Color of state law" is an essential element in all actions brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). Because plaintiffs allege no conduct committed under "color of state law", their action cannot lie under these sections.

Steele, 353 F.Supp. 629, 636 (D.Utah 1973), *discussed in O'Neal, supra,* 482 F.2d, at 1146, and Means v. Wilson, 383 F.Supp.378, 383 (D.S.D.1974).

With respect to defendant's fourth group of contentions, that plaintiffs could have filed suit in the tribal court system on the issues raised in this case, the court finds that the events detailed above in the paragraphs describing the background of plaintiff Williams' action sufficiently demonstrate a factual basis for the claim that the tribal judicial system is subservient to the tribal council, a defendant in this action. *See O'Neal, supra,* 482 F.2d at 1147. The court believes that it would be futile to require plaintiffs to initiate proceedings in the tribal court system, therefore exhaustion of those remedies will not be required.

Defendants' final contention is that plaintiffs · have a recall election procedure available and should be required to exhaust it.[6] The court declines to require exhaustion of the recall remedy for the following reasons. First, the tribal recall election procedure is not designed to remedy faulty election procedures. It is, rather, a remedy designed to allow the removal of an officer guilty of improper conduct in connection with his official duties. The exhaustion requirement does not mean that a person must exhaust remedies not designed to remedy the harm suffered. Furthermore, the results of a recall election, if held, would be irrelevant to the question of whether plaintiffs were denied due process of law by failure to comply with the tribal election ordinance. Exhaustion of an available procedure should not be required when the challengers' suc-

cess or failure on that procedure is irrelevant to the merits of their main claim.

This court finds that no further exhaustion of tribal remedies is necessary, and that it has jurisdiction to entertain this action.

## SOVEREIGN IMMUNITY

■  The court recognizes that Indian tribes have enjoyed, at the pleasure of the Congress, a sovereign immunity from suit. The Eighth Circuit Court of Appeals held in Daly v. United States, 483 F.2d 700, 705 (8th Cir. 1973), that the Indian Civil Rights Act abrogated by implication this immunity from suit. This court is bound by that holding. The next question, then, is whether plaintiffs have stated a claim upon which relief can be granted.

## HAVE PLAINTIFFS "STATED A CLAIM"?

Preliminarily, both plaintiffs have alleged, in essence, that defendants have failed to attempt compliance with and acted outside the provisions of the tribal constitution and the ordinances adopted pursuant thereto.[7] The threshold issue, therefore, is whether such conduct, if shown, is violative of due process. If this is answered in the negative, plaintiffs have failed to state a claim upon which relief can be granted. If it is answered in the affirmative, then the court must decide the merits: 1) whether the defendants have, in fact, failed to attempt compliance with or acted outside the tribal constitution or ordinances, and, if so 2) whether plaintiffs were denied liberty or property.

---

**6.** Article VI, section 3 of the tribal constitution provides in pertinent part:

> The voters of any district, by petition signed by ten (10) percent of the eligible voters in the district, may request the recall of its district councilman for improper conduct. The recall of members of the executive committee may be requested by a petition signed by twenty (20) percent of the eligible voters from the whole reservation.

The executive council consists of the tribal president, secretary, and treasurer.

**7.** This, in this court's view, distinguishes this case from that presented to Judge Bogue in *Means, supra.* In *Means* plaintiffs apparently alleged only administrative irregularities and fraudulent conduct in supervising the election.

■ Intervention in an intra-tribal controversy, which is what we have in the instant case, is an action that a court should take only with some hesitation absent a Congressional mandate. Wounded Head v. Tribal Council of the Oglala Sioux Tribe of the Pine Ridge Reservation, 8th Cir. 1975, 507 F.2d 1081, at 1079. *Means, supra,* 383 F.Supp., at 383–84. The Indian Civil Rights Act, however, provides that Indian tribes shall not deny individual Indians liberty or property without due process of law. The pivotal question, then, is whether the due process clause of the Indian Civil Rights Act is of sufficient scope to include the allegations of this case.

■ This court recognizes the dangers of succumbing to ethnocentrism in applying the Indian Civil Rights Act, but believes, nevertheless, that at the very core of due process is the proposition that a governing body must abide by and be governed by its own constitution and ordinances adopted pursuant to that constitution. Solomon v. LaRose, 335 F.Supp. 715, 722 (D.Neb.1971); *McCurdy, supra,* 353 F.Supp. at 634. To say that enforcement of the above proposition would somehow impose elements of an alien culture upon the Indians is, in this court's opinion, incorrect. The court finds, therefore, that plaintiffs have stated a cause of action upon which relief can be granted should all allegations be shown. The merits of the lawsuit remain to be considered.

## THE MERITS

As a preliminary matter, the court addresses the question of the validity, under the due process clause of the Indian Bill of Rights, of the December 21st "election." The election obviously was not conducted in accordance with the provisions of the tribal election ordinance.[8] Defendants contend that the election ordinance authorizes the tribal council to make exceptions to the provisions of the ordinance, and that the entire election was an authorized exception.

■ It is true that the election ordinance authorizes the tribal council to approve exceptions to the provisions of that ordinance.[9] The court also recognizes that the goal of a federal court in hearing this type of case should be only to provide basic fairness. There is no indication in the record, however, that the tribal council felt that it was acting under this provision when it voted to hold another election. This court is unwilling to accept the premise that a tribal council can decide to hold a new election and discard procedural requirements at will, and then, apparently as an afterthought, justify the procedurally-infirm election on the basis of a provision authorizing it to make exceptions to the ordinance.

It is this court's finding that the election of December 21, 1974, was conducted in violation of the election ordinance and was, therefore, violative of due process.

■ The merits of the two plaintiffs' claims challenging the November 5th election must be examined separately. First, with respect to plaintiff Williams, the record shows that 1) convicted felons are ineligible to seek and hold tribal office; 2) plaintiff Williams presented

8. The following provisions of the election ordinance were not complied with:
   1) Section II, A—the reservation election board is to be appointed not less than 70 days prior to the election.
   2) Section II, B, 2—notices of intent to run for tribal secretary must be filed 60 days prior to the election.
   3) Section II, B, 4—ballots are to be prepared.
   4) Section II, B, 6—by implication an election must be held; there is no provision in

the ordinance permitting a winner to be declared without an election.

9. Section X provides in pertinent part:
   This ordinance is intended to establish procedures to insure fair elections. All provisions of this Ordinance shall be complied with and no exceptions can be made without majority vote of the Tribal Council. Technicalities shall not be used to interfere, delay or block elections, or to cause confusion, or the loss of confidence in the election system.

the question of Vernon Cloud's eligibility to the defendant tribal council and the tribal court system; 3) Vernon Cloud's name was not removed from the ballot; and 4) Vernon Cloud was declared tribal secretary without a determination as to his eligibility to run in the November 5th election. The court finds, in light of the above, that defendants have failed to attempt compliance with the tribal election ordinance. Next is the question of Cloud's eligiblity to seek office in the primary election of mid-October. If he was eligible, plaintiff Williams has suffered no harm and his cause of action must fail.

Vernon Cloud on August 6, 1973, entered a plea of guilty in state court to a charge of assault with intent to inflict· great bodily injury. The plea was accepted and imposition of sentence was suspended under the provisions of S.D. C.L. 23–57–4 (1967). This section provides:

> Upon receiving a verdict or plea of guilty in the case of any person never before convicted of a felony. in this state for any offense not punishable by death or life imprisonment, the court having jurisdiction of the defendant, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may without entering a judgment of guilt, and with the consent of such person, suspend the imposition of sentence and place the defendant on probation for such period and upon such terms and conditions as the court may deem best, provided that the court may revoke the suspension at any time during the probationary period and impose and execute sentence without diminishment or credit for any of the probationary period. Upon proper showing of the observance of all conditions imposed the probationer may be discharged by the court and a formal entry of such discharge be filed with the clerk of courts of the county having jurisdiction of the offense. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. Discharge and dismissal under this section may occur only once with respect to any person. Any discharge and dismissal under this section shall be reported to the division of criminal investigation pursuant to SDCL 23–5 and 23–6.

Cloud was formally discharged from his probation under this section on December 6, 1974, and was, therefore, still on probation at the time of the primary election and the general election of November 5th. The ·question is, then, whether a person placed on probation under 23–57–4 is "convicted of a felony" during the term of that probation. This court's research has revealed no South Dakota court cases on this issue, therefore an independent analysis of the statute is necessary.

■ The legislative intent on this question is not entirely clear. It is a fundamental rule of statutory construction that a court must assume that the legislature meant every word of the statute and that, therefore, every word and phrase must be given force and effect.

The statute states that when imposition of sentence is suspended the court shall not enter a judgment of guilt. This weighs in favor of a finding that a defendant coming under this statute is not convicted of a felony because there can· be no conviction, in the normal sense, absent an entry of judgment of guilt. It would also be highly unusual, however, to place a person on probation absent a conviction. This would be the situation if the statute means what defendants contend it means.

This oddity can possibly be explained by the inclusion in the statute of the requirement that the defendant must consent to the procedure as ·a condition to placing him on probation without an entry of a judgment of guilt. This signals, in this court's view, recognition by the legislature that there normally can

be no probation absent a conviction, and that the legislature wished to provide for such a situation and did so by requiring the defendant's consent to the procedure.

The sentence in the statute providing that the discharge and dismissal "shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction" may also be troublesome to some. It does not state either explicitly or implicitly, however, that the discharge and dismissal *remove* any disqualification or disability. In this court's opinion, that sentence is designed to make it abundantly clear that a person dismissed and discharged from probation under this statute shall not suffer disabilities or disqualifications normally attached to a conviction. It does not appear to mean that disabilities and disqualifications attach at the time of probation and are removed only upon discharge and dismissal.

This court believes that the phrase "without entering a judgment of guilt" is determinative of this question, and that a person is not convicted absent an entry of a judgment of guilt. Therefore, Vernon Cloud was not a convicted felon at the time of the elections, and plaintiff Williams suffered no injury as a result of defendants' failure to make the necessary determination prior to the election. His claim, therefore, must be denied.

Plaintiff Two Stars contends: 1) the "recount" was unauthorized by the tribal constitution or election ordinance; and 2) defendants incorrectly invalidated four absentee ballots. Defendants contend: 1) there was no recount, but, rather, only a "verification" of the accuracy of the original ballot count, and that they have the inherent power to make such a verification; 2) the absentee ballots were invalidated for legitimate reasons.

It is unnecessary to decide whether the procedure whereby four absentee ballots were invalidated was a "recount" or merely a "verification" because, in this court's view, the procedure, however termed, was within the power of the election board. Although the tribal election ordinance does not provide specifically for such a procedure, it is, this court believes, implicitly authorized through the board's power to "supervise the general conduct of elections, settle all questions as to eligibility of voters, and resolve all disputes arising from the tabulation of ballots cast in the district polling places." Tribal Election Ordinance, II, (6). Furthermore, the election ordinance specifies that the ballots shall be counted by the district election judges, but, as stated above, provides that the reservation election board shall settle all disputes over the tabulation of the ballots. It is, therefore, implicit that if ballots or tabulations are disputed there must be a procedure, be it a "recount" or a "verification", for settling these disputes.

Having decided that defendants did not violate their own ordinance by holding the recount, the next question is whether the four ballots in question were indeed invalid. This is the type of question that this court should not decide absent allegations of criminality, fraud, or discrimination. Pettingill v. Putnam County, 472 F.2d 121, 122 (8th Cir. 1973); *Means, supra,* 383 F.Supp. at 386–88. Plaintiffs' counsel having informed the court that plaintiffs waive the opportunity to present evidence going to criminality, fraud, or discrimination, the court finds that plaintiff Two Stars has not carried the burden of showing such conduct, and his claim, therefore, must be denied.

The above constitute the court's findings of fact and conclusions of law. Defendants' counsel will prepare and submit the appropriate order.