Clifford J. LEWIS, Jr.,
Plaintiff-Appellant,

v.

George P. BAKER et al.,
Defendants-Appellees.

No. 195, Docket 75–7134.

United States Court of Appeals,
Second Circuit.

Argued Oct. 7, 1975.

Decided Nov. 20, 1975.

Albert A. Juron, New York City (Juron and Minzner, P. C., New York City), for plaintiff-appellant.

Robert M. Peet, New York City, for defendants-appellees.

Before WATERMAN, OAKES and MESKILL, Circuit Judges.

WATERMAN, Circuit Judge:

Plaintiff, Clifford J. Lewis, Jr., brought this action in the United States District Court for the Southern District of New York pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* and the Federal Safety Appliance Act, 45 U.S.C. § 1 *et seq.* alleging he suffered a disabling injury while employed by the Penn Central Railroad. Judgment was entered in favor of defendants after a jury trial. Plaintiff appeals and seeks a new trial on the following grounds: (1) accident reports were improperly admitted into evidence; (2) the trial court erred in charging the jury that they might infer proper functioning of the brake from evidence of the brake's condition before and after the accident; and (3) the trial court erred in charging that the jury might consider plaintiff's response to a question in his employment application on the issue of his credibility. Finding no merit to the above contentions, we affirm.

On the date of his injury, October 26, 1969, plaintiff was employed as a freight brakeman or car dropper in the Penn Central railroad freight yard in Morrisville, Pennsylvania. His work called for him to move freight cars in a railroad yard by riding them down a slope while applying the brake manually. Plaintiff testified that immediately before the incident in question, he climbed onto the lead car of two box-cars, stationed himself on the rear brake platform of that car, applied the brake to test it, and found that the brake held. Upon his signal, another employee of the railroad released the two box-cars from the rest of the train at the top of a hill, at which time they started to roll down the slope. Plaintiff then started to turn the vertical brake wheel so that the car would slow down as it descended the slope and would ease into the train with which it

was to couple on a track beyond the bottom of the slope. He claims that the brake did not hold, that the car continued to gather momentum, and that he then decided to leap off the car to avoid injury. As a result of the fall, he claims to have sustained substantial knee injury and the aggravation of a preexisting psychiatric condition which has precluded his returning to his job. There were no witnesses to the accident other than the plaintiff.

At the trial, defendants sought to rebut plaintiff's allegations of a faulty brake with evidence that the brake had functioned properly immediately prior to the accident when the plaintiff tested it, and immediately after the accident when it was checked in connection with the preparation of an accident report. It was the defendants' contention that plaintiff improperly set, or forgot to set, a necessary brake handle, panicked, and then leapt from the car.

In support of their interpretation of the events, defendants offered into evidence a "personal injury report" and an "inspection report." Frank Talbott, a trainmaster, testified that the personal injury report was signed by him and prepared under his supervision. The information had been provided to him by William F. Campbell, the night trainmaster. Talbott confirmed the authenticity of the record and testified that he was required to make out such reports of injuries as part of the regular course of business. At the trial David W. Halderman, an assistant general foreman for the defendants, identified the inspection report

which had been prepared by Campbell and by Alfred Zuchero, a gang foreman. This report was based upon an inspection of the car Campbell and Zuchero had conducted less than four hours after the accident. Halderman testified that Zuchero was dead and that Campbell was employed by a railroad in Virginia. The latter was thus beyond the reach of subpoena. Halderman also confirmed that following every accident involving injury to an employee his office was required to complete inspection reports, and that such reports were regularly kept in the course of business. Over objection, the court admitted both reports into evidence.

Determination of the admissibility of these reports under the Federal Business Records Act [1] involves two problems: whether the reports are business records within that statute, and whether the fact that the accident report was prepared by an employee who had neither first-hand knowledge of the accident nor had inspected the purportedly defective car and brake affects admissibility into evidence.

As a preliminary matter, there is little doubt that these reports are each a "writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event. . ." 28 U.S.C. § 1732 (1966). Furthermore, it is beyond dispute that these reports were made pursuant to a regular procedure at the railroad yard, and that Talbott, Campbell and Zuchero made the reports within a reasonable time after the acci-

---

1. 28 U.S.C. § 1732 provides, insofar as is applicable:

Record made in regular course of business
* * *
(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the

regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

The term "business," as used in this section, includes business, profession, occupation, and calling of every kind.

dent. Appellant argues, however, that notwithstanding the presence of those factors which would indicate a full compliance with 28 U.S.C. § 1732, the Supreme Court's decision in *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), precludes their admission into evidence. There the Court upheld the inadmissibility of an accident report offered by the defendant railroad that had been prepared by one of its locomotive engineers. The Court stated that since the report was not prepared "for the systematic conduct of the business as a business," it was not "made 'in the regular course' of the business" of the railroad. 318 U.S. at 113, 63 S.Ct. at 481. We find significant differences between the report and the circumstances of its making in that case and the facts here, and we uphold the district court's admission of the records below.

■ In *Palmer v. Hoffman*, the engineer preparing the report had been personally involved in the accident, and, as Circuit Judge Frank stated in his opinion for the Court of Appeals, the engineer knew "at the time of making it that he [was] very likely, in a probable law suit relating to that accident, to be charged with wrongdoing as a participant in the accident, so that he [was] almost certain, when making the memorandum or report, to be sharply affected by a desire to exculpate himself and to relieve himself or his employer of liability." 129 F.2d 976, 991 (2d Cir. 1942) (italics omitted). Here there could have been no similar motivation on the part of Talbott, Campbell or Zuchero, for not one of them was involved in the accident, or could have possibly been the target of a lawsuit by Lewis. In *United States v. New York Foreign Trade Zone Operators*, 304 F.2d 792 (2d Cir. 1962), we sus-

tained the admissibility of a similar report by the co-employee of the injured party which had been prepared as part of the regular business of the defendant pier-owner and operator. As we explained there, the mere fact that a record might ultimately be of some value in the event of litigation does not *per se* mandate its exclusion. In *Palmer v. Hoffman*, "[o]bviously the Supreme Court was concerned about a likely untrustworthiness of materials prepared specifically by a prospective litigant for courtroom use." 304 F.2d at 797. The fact that a report embodies an employee's version of the accident, *Taylor v. Baltimore & Ohio R. R. Co.*, 344 F.2d 281 (2d Cir. 1965), or happens to work in favor of the entrant's employer, *Naylor v. Isthmian S. S. Co.*, 187 F.2d 538 (2d Cir. 1951) does not, without more, indicate untrustworthiness. *See Pekelis v. Transcontinental & W. Air, Inc.*, 187 F.2d 122 (2d Cir.), *cert. denied*, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951). In the absence of a motive to fabricate, a motive so clearly spelled out in *Palmer v. Hoffman*, the holding in that case is not controlling to emasculate the Business Records Act. Therefore the trial court must look to those earmarks of reliability which otherwise establish the trustworthiness of the record. *See Gaussen v. United Fruit Co.*, 412 F.2d 72, 74 (2d Cir. 1969).

■ Here the ICC requires the employer to prepare and file monthly reports of all accidents involving railroad employees. Assistant general foreman Halderman testified that following every injury he was required to inspect the equipment involved and to report the results of the inspection on a regular printed form.[2] As we stated in *Taylor v.*

---

**2.** 45 U.S.C. § 38 provides in relevant part:

It shall be the duty of the general manager, superintendent, or other proper officer of every common carrier engaged in interstate or foreign commerce by railroad to make to the Secretary of Transportation a monthly report, under oath, of all . . . accidents resulting in death or injury to any person. . . .

Although 45 U.S.C. § 41 provides that neither the report required by section 38 nor any part thereof "shall be admitted as evidence . . . in any suit or action for damages growing out of any matter mentioned in said report or investigation," we think it clear that the reports prepared by Talbott and by Campbell and Zuchero were not themselves monthly reports under section 41, and there is no indi-

*Baltimore & Ohio R. R. Co., supra,* "[i]t would ill become a court to say that the regular making of reports required by law is not in the regular course of business." 344 F.2d at 285. In addition to their use by the railroad in making reports to the ICC, the reports here were undoubtedly of utility to the employer in ascertaining whether the equipment involved was defective so that future accidents might be prevented. These factors, we think, are sufficient indicia of trustworthiness to establish the admissibility of the reports into evidence under the Federal Business Records Act.[3]

■ The fact that the trainmaster Talbott completed the personal injury report based on information supplied to him by a third person, Campbell, does not render the report inadmissible. 28 U.S.C. § 1732 explicitly states that "lack of personal knowledge by the entrant or maker" shall not affect the admissibility of the record, and may only affect its weight.[4] *See also United States v. Re,* 336 F.2d 306, 313–14 (2d Cir.), *cert. denied,* 379 U.S. 904, 85 S.Ct. 188, 13 L.Ed.2d 177 (1964). Nor does the fact that the entrant does not testify preclude the admission of the record. All that is required is that someone who is sufficiently familiar with business practices be able to testify that the record was made regularly as part of those business practices and that the record is a truly authentic one.[5] *United States v. Dawson,* 400 F.2d 194, 198–99 (2d Cir. 1968), *cert. denied,* 393 U.S. 1023, 89

S.Ct. 632, 21 L.Ed.2d 567 (1969); *United States v. Teague,* 445 F.2d 114, 119 (7th Cir. 1971). Witnesses Talbott and Halderman met those requirements.

■ Appellant next contends that the district court erred in charging the jury that if the brake operated properly before the accident, that the jury might "presume that the functioning would have continued . . . at the time of plaintiff's accident," and that if the brake was found to be functioning normally and properly when it was later inspected by the trainmaster and gang foreman, that they might "infer or conclude . . . it would have operated normally and properly at the time of the accident, and, therefore, was not defective." During the trial, the plaintiff testified that the brake had in fact operated properly when he tested it prior to the release of the car. The information contained in the inspection report showed that Campbell and Zuchero had found nothing wrong with the brake in question when they inspected it after the accident.

■ When the state of an object at a particular time is in issue, we have repeatedly upheld the relevancy of evidence of that object's condition before and after the time in question. *See, e. g., Keohane v. New York Central R. R. Co.,* 418 F.2d 478, 481 (2d Cir. 1969); *Manning v. New York Telephone Co.,* 388 F.2d 910, 912 (2d Cir. 1968); *Berwind White Coal Mining Co. v. City of New York,* 48 F.2d 105, 107 (2d Cir.

cation that any part of the information contained in those reports will ever become part of the monthly report. Rather, it would appear that the forms completed by those employees were supplied by the employer, and that wholly different forms are utilized in complying with the federal reporting regulations, as prescribed by 49 C.F.R. § 225.1 *et seq.* Only the latter are barred by section 41 from admission in accident-related litigation.

**3.** The reports would also be admissible under the New York statute relative to business records, CPLR § 4518(a). *Toll v. State of New York,* 32 A.D.2d 47, 299 N.Y.S.2d 589 (1969); *Bishin v. New York Central R. R.,* 20 A.D.2d 921, 249 N.Y.S.2d 778 (1964).

**4.** The New York statute contains an identical provision. Furthermore, where, as here, the entrant has obtained the information from those who have a duty to transmit it, and the informant and the recorder are in the same business, the "double hearsay" involved does not preclude admission of the record under New York decisional law. *See Chemical Leaman Tank Lines, Inc. v. Stevens,* 21 A.D.2d 556, 251 N.Y.S.2d 240 (1964); *Johnson v. Lutz,* 253 N.Y. 124, 170 N.E. 517 (1930).

**5.** New York law is in accord. *Meiselman v. Crown Heights Hospital,* 285 N.Y. 389, 34 N.E.2d 367 (1941).

1931). *See also* 2 Wigmore, *Evidence* § 437 (3d ed. 1940). While the weight to be given evidence of prior and subsequent condition differs in each case and is of course a question for the trier of fact, it was proper for the trial judge to tell the jury that they might conclude or presume from that evidence a proper functioning during the interim. He additionally instructed that:

> If you find there was failure of the hand brake owing to unexplained reasons as distinguished from a known or explainable condition, then it is not material that the hand brake performed properly at another time.

Thus, it was made clear to the jury that if they believed defendants' evidence, they might infer continuance forward and back; but if they believed plaintiff's testimony, then the prior and subsequent condition of the brake was not material. That was a correct statement of the applicable law.

█ Appellant's final contention pertains to the trial judge's charge to the jury that it might consider on the issue of his credibility an employment application containing an admittedly untruthful statement regarding his psychiatric disorder. At the time of his application for employment with the defendant, Lewis was asked to complete a form which contained questions regarding his medical history and confinement in a hospital or sanitarium. He certified his negative answers to those questions to be true answers at the time he completed the form, but he admitted at trial that the negative answers were not truthful in view of his confinement to a psychiatric hospital and treatment less than five years prior to his employment with Penn Central. He now claims that it was improper for Judge Levet to charge the jury that those untruthful statements were relevant to any issue relating to his credibility.

█ It is well-settled that the trial judge is accorded great discretion in his assessment of the matters which should properly be raised on cross-examination as bearing on the credibility of a party or witness. *See, e. g., Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Wright v. United States*, 87 U.S.App.D.C. 67, 183 F.2d 821, 822 (1950). The relevancy of testimony which aids in the jury's determination of a party's credibility and veracity has been repeatedly affirmed.[6] *Pullman Co. v. Hall*, 55 F.2d 139, 141 (4th Cir. 1932); 3A Wigmore, *Evidence* § 922 (Chadbourn rev. 1970); McCormick, *Evidence* § 42 (1972). Although an opponent is not permitted to adduce extrinsic evidence that a party lied on a previous occasion, he may nonetheless ask questions to that end.[7] *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63–64 (2d Cir. 1969); *Hawkins v. Missouri Pac. R. Co.*, 188 F.2d 348, 351–52 (8th Cir. 1951).

The employment application involved here was a form completed by Lewis as a prerequisite to his obtaining the job of car dropper for Penn Central. His failure truthfully to inform his future employer of a psychiatric condition which defendants argue could have affected his judgment on the evening in question was thus not without probative value on the issue of his veracity. Particularly, as the jury's ultimate task was to decide whether they would believe plaintiff's or

---

6. Rule 608(b), Federal Rules of Evidence, provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness. . . .

7. While this court has consistently employed a rigorous rule in criminal cases requiring that specific acts of past misconduct may not be inquired into on cross-examination unless they resulted in conviction, that rule is inapplicable to civil cases. *See Independent Productions Corp. v. Loew's, Inc.*, 22 F.R.D. 266 (S.D.N.Y. 1958).

defendants' account of the events on October 29, such evidence bearing directly on a party's capacity for truth-telling was relevant.[8] Thus the testimony regarding prior falsification of the application was properly elicited from Lewis, and we uphold the propriety of the trial judge's charge that that evidence might be considered by the jury on the issue of plaintiff's credibility.

Affirmed.

**8.** Such evidence is also admissible to impeach credibility in the New York courts. *Batease v. Dion*, 275 App.Div. 451, 90 N.Y.S.2d 851 (1949); *McQuage v. City of New York*, 285 App.Div. 249, 136 N.Y.S.2d 111 (1954).