STATE of South Dakota, Plaintiff
and Respondent,

v.

Lester E. JOHNSON, Defendant
and Appellant.

No. 11686.

Supreme Court of South Dakota.

May 26, 1977.

Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Sidney B. Strange, Sioux Falls, for defendant and appellant.

ZASTROW, Justice (on reassignment).

Defendant appeals from the judgment of conviction entered after he was found guilty by a jury on a charge of unlawfully possessing amphetamines. SDCL 39–17–95. We reverse.

Defendant's first contention is that the trial court erred in denying him a hearing on his motion to suppress evidence. Following his arrest on September 20, 1974, defendant retained his present counsel to represent him on the instant charge. When defendant was arraigned in circuit court on November 11, 1974, he was informed that he would have a period of two weeks in which to file any pretrial motions. On February 17, 1975, his attorney made a motion to withdraw as retained counsel. On March 6, 1975, this motion was granted and the same attorney was appointed to represent defendant on the basis of indigency. On April 21, 1975 (after the assignment of the case to a new judge), counsel filed a motion to suppress certain evidence that had been seized at the time of defendant's arrest. The state moved to quash the motion on the ground that it was untimely. In response to a letter of inquiry from the trial court, defendant's attorney replied by letter that he had filed the motion to suppress in his capacity as appointed counsel solely to protect the record, and that had he been acting as appointed counsel at the time of the arraignment he would have filed the motion

within the two-week period specified by the trial court. The trial court refused to hold a hearing on the motion and the case went to trial on April 29, 1975. Defendant renewed the motion to suppress during trial, urging the same grounds set forth in his earlier written motion. The trial court denied the motion.

We conclude that the trial court did not err in denying defendant a hearing on his belated motion to suppress.

The sole excuse given to the court for the delayed filing of the motion was the fact of the change in counsel's status from that of retained counsel to that of appointed counsel. During oral argument before this court, defendant's counsel asserted several additional reasons why the motion had not been filed earlier; the record does not reveal that these reasons were presented to the trial court.

It would appear that the original order requiring the defendant present a pretrial motion was in keeping with the National Advisory Commission's Standards and Goals for Courts (NAC, Courts).

"All pretrial motions should be filed within 15 days of the preliminary hearing, the waiver of the preliminary hearing, or apprehension or service of summons following indictment, whichever form the initiation of prosecution has taken in the case. A hearing should be held on such motions within 5 days of the filing of the motions. The court should rule on such motions within 72 hours of the close of the hearing." NAC, Courts, Standard 4.10.

See also South Dakota Criminal Justice Standards and Goals (S.D.S & G), Courts Standard 4.8. However, these standards were established within a time frame requiring a felony trial within sixty days following the preliminary hearing, not, as here, seven months.

The purpose of requiring such motions to be filed within a definite period of time is to allow the courts to schedule, hear, and rule upon these pretrial matters in an orderly fashion, and we are loathe to dis-

courage such practice. However, we do not feel that a limit of two weeks after arraignment to file pretrial motions is reasonable when the trial does not occur until six and one-half months after the arraignment. Likewise, filing a motion to suppress only eight days before trial after a six and one-half month delay does not appear to be a good faith effort on the part of defense counsel to investigate and present such motions for an orderly disposition.

The trial judge should set a date for filing pretrial motions which will give the defendant an adequate amount of time to investigate and prepare for such motions, yet allow the court to hear and determine such motions in an orderly fashion.

"Failure to raise any issue concerning the admissibility of evidence or other matter appropriately raised before trial in accordance with this procedure should preclude a defendant from otherwise raising the issue, unless the defense establishes that the information essential to raising the issue was not reasonably available at the time when this procedure required that the issue be raised." NAC, Courts, Standard 4.10; S.D.S & G, Courts Standard 4.8.

See also ABA Standards, Discovery and Procedure Before Trial, § 5.3(b).

Because this matter must be remanded for a new trial for the reasons hereinafter stated, the trial court will be in a position to schedule and hear, before the retrial, the motion to suppress if presented by the defendant.

Defendant also contends that the trial court erred in ordering that defendant's witnesses, as well as the state's, be sequestered pending their testimony. This order came in response to the deputy state's attorney's request that defendant's witnesses be sequestered because she anticipated that several of the witnesses might be juveniles whose testimony might contain discrepancies.

The purpose of sequestering witnesses, of course, is to avoid the coloring of a witnesses' testimony by that which the

witness has heard from the witnesses that have preceded him. *Spencer v. State,* Fla., 133 So.2d 729. Whether witnesses should be sequestered is a matter that is within the sound discretion of the trial court. See, e.g., *State v. Olek,* 288 Minn. 235, 179 N.W.2d 320; *State v. Bautista,* 193 Neb. 476, 227 N.W.2d 835; *Fletcher v. State,* 68 Wis.2d 381, 228 N.W.2d 708. We conclude that the trial court did not abuse its discretion in ordering that all witnesses be sequestered.

Defendant contends that the trial court erred by refusing to instruct the jury that the state was obligated to prove that the five tablets allegedly in defendant's possession contained a quantity of amphetamine sufficient to have a potential for abuse.

SDCL 39–17–62 provides that:

"Any material, compound, mixture, or preparation is included in Schedule III which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:

(1) Amphetamine, its salts, optical isomers, and salts of its optical isomers.
* * *."

■ Although the state has favored us with no authority on this question, there are a number of decisions holding that the phrase "having a potential for abuse associated with a stimulant effect on the central nervous system," used in statutes similar to SDCL 39–17–62, modifies the word "substances" appearing immediately preceding the quoted phrase, thus making it unnecessary for the state to prove that the quantity of amphetamine contained in the substance in question was sufficient to create a potential for abuse associated with a stimulant effect on the central nervous system. See, e.g., *United States v. Nickles,* 5 Cir., 509 F.2d 810; *United States v. Levin,* 8 Cir., 443

F.2d 1101, cert. den. 404 U.S. 944, 92 S.Ct. 297, 30 L.Ed.2d 260; *State v. Collinsworth,* 96 Idaho 910, 539 P.2d 263; *People v. Busby,* 56 Mich.App. 389, 224 N.W.2d 322; *State v. Jefferson,* Mo., 391 S.W.2d 885; *State v. Jennings,* 195 Neb. 434, 238 N.W.2d 477; *State v. Allesi,* N.D., 216 N.W.2d 805. This is the logical reading of the statute, and we adopt the reasoning of those decisions which have so held. Accordingly, the trial court did not err in refusing to give the requested instruction.

The defendant took the stand to testify in his own behalf. That testimony related only to the events of the evening of his arrest and no evidence of his good character was presented (see *State v. Petruzello,* 1977, S.D., 250 N.W.2d 682). Defendant's counsel had moved for a protective order to prevent the state from questioning the defendant concerning a prior drug offense in which he had been arrested, charged and entered a plea of guilty to a charge of possession of amphetamines. Pursuant to SDCL 39–17–113,[1] no judgment of guilt was entered and defendant was placed upon probation on March 1, 1974.

The state at the trial contended that the defendant's plea of guilty and the withholding of judgment and order of probation was proper impeachment, either as a prior felony conviction or as prior misconduct.

The trial court's ruling was as follows:

"THE COURT: * * * It will be the Order of the Court that the States Attorney will be restricted from inquiring of the defendant on cross-examination as to any prior conviction or adjudication of guilt; but, that the States Attorney will not be precluded from asking the defendant whether or not he has made any admissions concerning any prior drug offenses and will not be allowed to go into the details, only whether or not any ad-

---

1. SDCL 39–17–113, provides in part that: "Whenever any person who has not previously been convicted of any offense under this chapter or under any statute of the United States or of any state relating to narcotic drugs, marihuana, or stimulant, depressant, or hallucinogenic drugs, pleads guilty to, or is found guilty under * * * 39–17–95 * * * the court

may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as it may require. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided."

missions have been made. * * * There is no judgment of conviction. The accused does not stand convicted.

* * * * * *

"MR. STRANGE: * * * What are you going to let her ask him?

"THE COURT: Whether or not he made an admission of any prior offenses and that's all; but, not whether he had been convicted or any details.

* * * * * *

"MRS. ULRICH: I can ask him then not whether he entered a plea of guilty or can I ask that?

"THE COURT: No. · * * * I'll stand by my original Order. We will back up one notch from that, whether or not he made an admission to a charge of a drug-related offense."

The question put to the defendant was as follows:

"Q Mr. Johnson, didn't you admit to having amphetamines in your possession in February of 1974?

* * * * * *

"A Yes."

 It is evident from the discussion set out above that the question asked by the state was intended to elicit impeachment evidence. Our task is to decide whether the information sought is proper impeachment within the context of this case. Defendant's response is not admissible as an admission against interest because it is not probative of a material fact presently in issue. *State v. Jerke,* 1949, 73 S.D. 64, 38 N.W.2d 874. Nor is his "admission" properly admis-

sible as evidence of other independent and disconnected offenses. Such evidence is only admissible to show defendant's identity, motive, knowledge, intent or malice, acts of a plan or system of criminal action, or acts constituting continuous offenses. *State v. Pickering,* 1974, S.D., 217 N.W.2d 877; see also South Dakota Pattern Jury Instruction 1–16–8.

 The state argues on appeal that the question asked seeks a properly admissible response because it impeaches the defendant's credibility. When a defendant elects to testify in his own behalf, his credibility as a witness may be tested in the same manner as any other witness. *State v. Olson,* 83 S.D. 260, 158 N.W.2d 526; 81 Am. Jur.2d, Witnesses, § 524. However, "[a] defendant who takes the witness stand should not be [forced] to explain or defend against any and all past criminal offenses regardless of degree or relevancy to veracity character." *State v. Olson,* 83 S.D. at 264, 158 N.W.2d at 528.

 However, specific instances of misconduct of the defendant-witness may be inquired into on cross-examination[2] at the discretion of the trial judge if he finds that (1) such acts are relevant and probative of his veracity[3] and (2) the probative value outweighs the risk of undue prejudice, confusion of issues misleading of the jury, or unnecessary delay. 98 C.J.S. Witnesses § 514, et seq.; 81 Am.Jur.2d, Witnesses, §§ 591–594; 3A Wigmore, Evidence, §§ 979, 983 (Chadbourn Rev. 1970); 4 Jones on Evidence, § 26:19; 3 Weinstein's Evidence, ¶ 608[05]; Federal Rules of Evidence, 28 U.S.C.A. 608(b).

---

**2.** Impeachment of a defendant-witness' veracity character by extrinsic evidence may be made by showing a conviction (see discussion infra) or testimony as to the general reputation of the defendant-witness for truth and veracity. *State v. McCreary,* 1966, 82 S.D. 111, 142 N.W.2d 240; *State v. Olson,* 1968, 83 S.D. 260, 158 N.W.2d 526. See generally, Federal Rules of Evidence, 28 U.S.C.A. 608(a); 98 C.J.S. Witnesses § 498, et seq.

**3.** Misconduct relevant to veracity generally involves fraud, perjury, or false statements, e.g., false statements in visa application and tax returns, *Simon v. United States,* 4 Cir., 123 F.2d 80; use of false names, *Lyda v. United States,* 9 Cir., 321 F.2d 788; false accusations of rape, *People v. Sheperd,* Colo.App., 551 P.2d 210; *People v. Shackelford,* Colo.App., 546 P.2d 964; false answers on employment questionnaire, *Lewis v. Baker,* 2 Cir., 526 F.2d 470; and false reports to police, *Kitchen v. United States,* 95 U.S.App.D.C. 277, 221 F.2d 832.

The question asked had dubious relevance to defendant's veracity.[4] The practical effect of the inquiry was to place defendant's character in issue. It is important to note that the question sought to elicit an admission of prior criminal activity identical to the conduct for which the defendant was currently being tried. To the average person, the "admission" of prior possession is evidence of the defendant's bad character; the logical assumption follows that he is more likely to commit the offense charged than is someone of good character. Courts have consistently looked with disfavor on receiving evidence of defendant's bad character unless he first offers evidence of his good character. *State v. McCreary*, 1966, 82 S.D. 111, 142 N.W.2d 240. See also *State v. Petruzello*, supra; McCormick on Evidence, § 190, at 447 (E. Cleary Ed., 2d Ed. 1972).

This is not a situation where the defendant has offered evidence of his good character, and the state legitimately attempts to rebut that evidence. *State v. Petruzello*, supra. The defendant had not placed his character in issue and the question was therefore improper. *State v. McCreary*, supra. Even assuming that the question is somehow related to defendant's veracity, the relationship is so tenuous that the prejudicial effect of the question undoubtedly outweighs its probative value. See *State v. Sahlie*, 1976, S.D., 245 N.W.2d 476; *State v. Pickering*, supra. Under the facts of this case, it was error to allow cross-examination of the defendant concerning prior drug possession for impeachment purposes, and we reverse the conviction for that reason.

The state also urges that the prior plea of guilty and withholding of judgment was properly admitted as a "prior conviction." It was not admitted as a conviction, for if it had been admitted for such purpose, the trial court would have instructed the jury that the conviction was to be used only to judge the credibility of the defendant, and not as evidence of his guilt.[5] South Dakota Pattern Jury Instruction 1–17–12; 23 C.J.S. Criminal Law § 1032(3).

This court has held in *State v. Olson*, supra, *Fanning v. State*, 85 S.D. 246, 180 N.W.2d 853, and *State v. Van Beek*, 87 S.D. 517, 211 N.W.2d 355, that the use of convictions to impeach an accused who has taken the stand was not restricted to felonies involving dishonesty or false statements. The Federal Rules of Evidence 28 U.S.C.A. 609(a), adopt the majority view and is compatible with *Olson, Fanning* and *Van Beek*:[6]

> "For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

The interpretation of "conviction" for impeachment purposes has been clouded by the enactment of the "deferred judgment" statutes. SDCL 39–17–113[7] and SDCL 23–57–4.[8] Both statutes contain substantially

---

4. See generally, Annot., 65 A.L.R.3d 705; 81 Am.Jur.2d, Witnesses, § 546.

5. However, the giving of such instruction would not have corrected the trial court's error in admitting the prior plea as a conviction for impeachment purposes in the view of this writer.

6. The admissibility of "any felony" for impeachment purposes is not absolute and the trial judge must determine the probative value of the conviction. *State v. Sahlie*, 1976, S.D., 245 N.W.2d 476.

7. See footnote 1.

8. "Upon receiving a verdict or plea of guilty in the case of any person never before convicted of a felony in this state for any offense not punishable by death or life imprisonment, the court having jurisdiction of the defendant, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may without entering a judgment of guilt, and with the consent of such person, suspend the imposition of sentence and place the defendant on probation for such period and upon such terms and condi-

the same provisions, most notably, that probation may be granted and the imposition of sentence may be suspended "without entering a judgment of guilt." The statutes apply equally to a verdict of guilty and a plea of guilty.

The state relies upon *State v. Van Beek*, supra, and *State ex rel. Sedam v. Circuit Court*, 1949, 72 S.D. 494, 36 N.W.2d 672, as authority for its contention that a plea of guilty is a "conviction." It must be pointed out that probation "without entering a judgment of guilt" was not effective in our probation procedure until July 1, 1972.[9] Van Beek had been convicted of the first felony on April 24, 1972, and the second on May 18, 1972; *Sedam* was decided in 1949. It appears that the basis of *Van Beek* and similar cases is that once a plea of guilty or verdict of guilty was made, the entry of judgment of guilt would necessarily follow. Before statutes such as SDCL 23–57–4 and SDCL 39–17–113, this was true; however, since their enactment, entry of judgment of guilt may be delayed or never occur. The logic of *Van Beek, Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009, that after a plea of guilty "nothing remains but to give judgment and determine punishment," is no longer applicable under our current probation procedure.

This problem was presented to the Federal District Court for South Dakota in *Wil-liams v. Sisseton-Wahpeton Sioux Tribal Council,* 1975, D.C.S.D., 387 F.Supp. 1194:

"The question is, then, whether a person placed upon probation under (SDCL) 23–57–4 is 'convicted of a felony' during the term of that probation.

\* \* ·\* \* \* \*

"The statute states that when imposition of sentence is suspended the court shall not enter a judgment of guilt. This weighs in favor of a finding that a defendant coming under this statute is not convicted of a felony because there can be no conviction, in the normal sense, absent an entry of judgment of guilt. It would also be highly unusual, however, to place a person on probation absent a conviction. \* \* \*

"This oddity can possibly be explained by the inclusion in the statute of the requirement that the defendant must consent to the procedure \* \* \*. This signals \* \* \* recognition by the legislature that there normally can be no probation absent a conviction \* \* \*.

"The sentence in the statute providing that the discharge and dismissal 'shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction'[10] may also be troublesome to some. It does not state either explicitly or implicitly, however, that the discharge and dismissal *remove* any disqualification or disability. In this court's opinion, that sentence is designed to make it abundantly clear that a person

---

tions as the court may deem best, provided that the court may revoke the suspension at· any time during the probationary period and impose and execute sentence without diminishment or credit for any of the probationary period. Upon proper showing of the observance of all conditions imposed the probationer may be discharged by the court and a formal entry of such discharge be filed with the clerk of courts of the county having jurisdiction of the offense. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. Discharge and dismissal under this section may occur only once with respect to any person. \* \* \*"

9. Chapter 149, S.L. 1972.

10. SDCL 39–17–114 contains similar language: "If during the period of his probation under § 39–17–113, such person does not violate any of the conditions of the probation, then upon expiration of such period the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt. \* \* \* Such discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. \* \* \*"

dismissed and discharged from probation under this statute shall not suffer disabilities or disqualifications normally attached to a conviction. *It does not appear to mean that disabilities and disqualifications attach at the time of probation and are removed only upon discharge and dismissal.*

" * * * [T]he phrase 'without entering a judgment of guilt' is determinative of this question, and that a person is not convicted absent an entry of a judgment of guilt." (emphasis supplied) 387 F.Supp. at 1200–1201.

██ A plea of guilty which results in probation without entering a judgment of guilt under SDCL 39–17–113 or SDCL 23–57–4 is not a conviction and may not be used for impeachment purposes unless and until the probation is revoked and a judgment of guilt entered. *State v. Cliett,* 1975, 96 Idaho 646, 534 P.2d 476; *State v. Bouthillier,* 1970, 4 Or.App. 145, 476 P.2d 209, modified Or.App., 479 P.2d 512; *Belle v. State,* 1973, Okl.Cr., 516 P.2d 551; *Sparks v. State,* 1972, Okl.Cr., 503 P.2d 890; *Murphree v. Hudnall,* 1973, Miss., 278 So.2d 427; *United States v. Lee,* 1974, 166 U.S.App. D.C. 67, 509 F.2d 400. See also *State v. Farmer,* 1975, Iowa, 234 N.W.2d 89.

The judgment and conviction are reversed and the matter remanded for a new trial.

PORTER and MORGAN, JJ., concur.

WOLLMAN, J., concurs in part and dissents in part.

DUNN, C. J., dissents.

WOLLMAN, Justice (concurring in part, dissenting in part).

I would hold that the trial court did not err in denying defendant a hearing on his belated motion to suppress evidence. Although during oral argument before this court defendant's counsel asserted several additional reasons why the motion had not been filed earlier, the record does not reveal that these reasons were presented to the trial court. The sole excuse given to the trial court for the delayed filing of the motion was the fact of the change in counsel's status from that of retained counsel to that of appointed counsel. Although it may be true that appointed counsel has a duty to assert all possible contentions on appeal, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, the failure to file a pretrial motion promptly is not excused ipso facto by the change in counsel's status from retained to appointed. Accordingly, the trial court did not err in denying counsel's late request for a hearing on the motion to suppress. *State v. Glick,* 87 S.D. 1, 201 N.W.2d 867.

I would also hold that the trial court did not err in permitting the state to ask defendant on cross-examination whether he had admitted to having amphetamines in his possession in February of 1974. In fact, defendant had entered a plea of guilty to such a charge in February of 1974 and had been placed on probation under the provisions of SDCL 39–17–113, which provides in part that:

"Whenever any person who has not previously been convicted of any offense under this chapter or under any statute of the United States or of any state relating to narcotic drugs, marihuana, or stimulant, depressant, or hallucinogenic drugs, pleads guilty to, or is found guilty under . . . § 39–17–95 . . . the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as it may require. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided."

We have recently held that a jury verdict of guilt stands as a conviction for purposes of impeachment. *State v. Van Beek,* 87 S.D. 517, 211 N.W.2d 355. See also, e. g., *United States v. Rose,* 8 Cir., 526 F.2d 745; *People v. Johnson,* Colo., 560 P.2d 465. Defendant contends that a guilty plea or jury verdict of guilt under SDCL 39–17–113 stands on a different plane, however, inasmuch as under that statute the court may

place a defendant upon probation without entering a judgment of guilt. If the period of probation is completed successfully, the court shall discharge the defendant and dismiss the proceedings, all without adjudication of guilt, and ". . . [s]uch discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime . . ." SDCL 39–17–114. Similar provisions now exist in the statute providing for suspension of imposition of sentence on other felonies. SDCL 23–57–4. The fact that a defendant may ultimately have the charges dismissed and not suffer any of the disabilities normally associated with a felony conviction, however, does not alter the fact that until such dismissal and discharge occurs, a defendant's plea of guilty stands and may form the basis for an adjudication of guilt by the court upon the violation by the defendant of the conditions of probation. Although the purpose of statutes such as SDCL 23–57–4, SDCL 39–17–113 and SDCL 39–17–114 may be to provide for the rehabilitation and full restoration of those whose violations of law are of a nature that calls for leniency and correction rather than retribution and confinement, the fact remains that a plea of guilty carries with it serious consequences, for as the United States Supreme Court has stated:

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279.

This is in accord with what this court said in *State ex rel. Sedam v. Circuit Court:*

"A plea of guilty is the equivalent of a conviction the effect of which is to authorize the imposition of the sentence prescribed by law on a verdict of guilty of the crime sufficiently charged in the information." 72 S.D. 494, 496, 36 N.W.2d 672, 674.

I am not persuaded that we should adopt a different rule for guilty pleas than we adopted for jury verdicts in *State v. Van Beek,* supra. Granted that a defendant who has entered a guilty plea or who has been found guilty may ultimately be discharged under the provisions of SDCL 39–17–114 and SDCL 23–57–4 and thus exonerated from the consequences that might otherwise result from a conviction, once a defendant has admitted his guilt in a manner and under such circumstances that would entitle the trial court to enter judgment and impose sentence, his credibility is no less impaired and impeachable merely because the trial court did not do so.* It is the solemn admission of guilt by a defendant on the one hand, and the equally solemn finding of guilt by a jury on the other, both entered in accordance with constitutional and statutory procedures painstakingly followed by the trial judge, and not the adjudication of guilt by the trial judge, that serve as the basis for subsequent impeachment. A guilty plea operates just as much as a jury verdict to overcome the presumption of innocence, and it stands as a verity until set aside. If it were not so, it would hardly have been necessary to provide in SDCL 39–17–114 and SDCL 23–57–4 that dismissal and discharge under those statutes shall not be deemed a conviction for purposes of disqualifications or disabilities.

I agree with the majority opinion's disposition of the sequestration issue and interpretation of SDCL 39–17–62.

DUNN, Chief Justice (dissenting).

I concur in Justice Wollman's dissent. This defendant had been convicted of a prior felony in February 1974. The fact that the trial judge tried to rehabilitate this young defendant under the provisions of SDCL 39–17–113 cannot change this conviction. Moreover, the defendant was still on probation from the first offense when he committed the present offense. According-

---

* "We find no significant difference between the jury's finding of guilt and the entry of judgment thereon as far as probative value for impeachment purposes." *United States v. Rose,* supra, 526 F.2d at 747.

ly, his record had not been cleared even under SDCL 39–17–113. To permit this defendant to "play games" with a statute devised to rehabilitate young offenders is distasteful to my sense of justice and should not be permitted. I would affirm.