Re: **OLNEY RUNS AFTER et al.**

v.

**CHEYENNE RIVER SIOUX TRIBE, etc., et al.**

No. CIV–77–3026.

United States District Court,
D. South Dakota.

Oct. 5, 1977.

Joseph G. Troisi, Jr., and Michael D. Golden, S. D. Legal Services, Eagle Butte, S. D., for plaintiffs.

Dennis H. Hill, Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Prior to 1976 and during part of 1976 the Cheyenne River Sioux Tribe operated an economic development program known as the Tribal Rehabilitation Program. It is undisputed that during the operation of this program some members of the tribe became indebted to the tribal treasury. At the February, 1977, meeting of the Cheyenne River Sioux Tribal Council, a resolution numbered 22–77–CR was passed; by this resolution the tribal council cancelled all "Rehab. debts."

Plaintiffs in this lawsuit are members of the tribe who did not approve of the council's action, and have sought to invoke what they believe is a check on the power of the council; namely, the power to demand a referendum. Article VII of the constitution of the Cheyenne River Sioux Tribe states:

Section 1. Upon a petition of at least three hundred (300) qualified voters of the Cheyenne River Sioux Reservation a referendum may be demanded on any enacted or proposed ordinance or resolution of the Cheyenne River Sioux Tribal Council, and the vote of the majority of the qualified voters in such referendum shall be conclusive and binding on the tribal council.

It is not disputed that three hundred (300) qualified voters demanded a referendum; they did, and this Court so finds. This Court further finds that the tribal council and tribal chairman refused to act on the demand for a referendum. Additionally, the tribal council refused to waive sovereign immunity.

The questions presented are two: (1) whether tribal remedies have been exhausted, and (2) whether the failure of the council and chairman to act on the demand for a referendum violated any rights secured by federal law.

I.

## EXHAUSTION

■ The general rule is that a person who alleges that federally secured rights have been violated by a tribal government must exhaust his tribal remedies, both judicial and administrative, before coming into federal court. *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973); *Janis v. Wilson*, 521 F.2d 724 (8th Cir. 1975). We are satisfied that there is no administrative remedy available in this case. Plaintiffs have exhausted their potential judicial remedy at the tribal trial court level. The only factual issue bearing upon the legal requirement of exhaustion is whether plaintiffs availed themselves of the potential remedy offered by an appeal to the tribal appellate court.

The testimony at the hearing has given a basis upon which it is reasonable to conclude that an appellate court does in fact exist on the Cheyenne River Reservation in accordance with the provisions of Title 4, subchapter 4, of the tribal code. Controversy surrounds the question of the past and present functioning of this appellate court. Plaintiffs characterize it as being in a state of "limbo" and contend that resort to that tribunal has been futile in former times and would be futile now.

Defendants, on the other hand, contend that the court is functioning and has a reasonably well-established procedure. Defendants point with particular emphasis to the fact that Title 4 § 49 of the tribal code requires notice of appeal within five (5) days of a judgment or other final order. Plaintiffs as a matter of fact did *not* file a timely notice of appeal. For this reason defendants urge this Court to conclude that plaintiffs simply ignored a tribal judicial remedy and presumably forfeited whatever rights they may have had.

Plaintiffs then bring us back around to the starting point and argue that an attempted appeal in the first instance would have been wasted effort because the appellate court was not regularly hearing appeals. They introduced evidence to show

nonfeasance on the part of the appellate court in other instances. Defendants also introduced a letter of April 21, 1977, to the Honorable Gilbert LeBeau from one Theodore Buffalo wherein inquiries about the organization of an appellate court and a possible hearing date were made. Ex. 15. The evidence indicates that no response was ever forthcoming.

From the evidence produced at the hearing on September 26, 1977, this Court finds:

1. The docketing of cases for appeal to the Cheyenne River Sioux Tribal Appellate Court has been erratic during 1977;

2. Appeals have not been expedited;

3. Inquiries regarding the appeals process have not been answered; and

4. Plaintiffs were justifiably skeptical about the operation of any appellate tribunal during the period in question.

■ The use of the tribal judicial system must be encouraged and the tribal appellate court should be normally the interpreter of tribal laws. Nevertheless, plaintiffs wanting to use the appellate court should not be required to assist in each instance in the creation of the court which they seek to use. The requirement of exhaustion has a reasonableness standard within it. *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975).

■ Under the circumstances of this case, the plaintiffs acted reasonably; they sought with due diligence to get a remedy in the tribal judiciary. When they failed to get a remedy from the lower tribal court, they reasonably concluded that the next hope was in federal court as prior experience had taught them that attempted appeals would be ignored.

If it appeared likely at this time that the tribal appellate court would consider this case on remand, then this Court would assuredly send it there immediately. We find no such likelihood. The Honorable Gilbert LeBeau, superior court judge, took the stand at the hearing in federal court, and when asked about the possibility of granting the plaintiffs an extension of time in which to appeal, testified that he could not say whether an appeal would be possible at this late date or not. When this Court specifically inquired whether he had any feelings about the possibility of giving the plaintiffs an extension, Judge LeBeau stated: "It would be entirely up to the council."

■ In the exchange that followed, it became clear that the council which originally cancelled the debt and thereafter refused to call a referendum, would be the same council that would determine whether the judicial officers of the tribe should grant plaintiffs an extension on the time for appeal. We do not assume that the council will operate in bad faith and cannot forecast with certainty what their decision would be. Yet, at this juncture it would strain common sense to postulate that appellate review would be granted in the council's discretion when the council has made every effort to foil plaintiffs' hopes for a referendum, and has refused to waive sovereign immunity. Much as this Court would like to send this matter back for tribal appellate review, we decline to do so because there appears to be no reasonable possibility that a timely review would be made.

Time is of the essence here. Plaintiffs assert that they are being deprived of a federally secured right to vote on matters of great importance to the tribe. If plaintiffs are correct, this is not a matter that can be tossed back and forth indefinitely without the risk of grave injury; hence, this Court will proceed to the merits.

## II.

### THE MERITS

■ The Eighth Circuit has held that the Indian Civil Rights Act guarantees the right to vote in tribal elections. *Means v. Wilson, supra, Brown v. United States,* 486 F.2d 658 (8th Cir. 1973); *Daly v. United States,* 483 F.2d 700 (8th Cir. 1973); and *White Eagle v. One Feather,* 478 F.2d 1311

(8th Cir. 1973). The right asserted in these prior cases has been the right to vote for officers of the tribe, not the right to vote in a referendum concerning a decision of a duly-elected tribal council. We do not find authority that specifically declares that the right to a vote in a referendum is a federally-protected right. It is this Court's opinion, however, that the right asserted in the present case is, like the right to vote in a tribal general election, a fundamental part of a democratic majoritarian system. A tribal constitution need not provide for a referendum on all issues of interest which tribal members may wish to contest, but if a referendum is provided for, then its denial cannot be arbitrary and capricious.

■ The due process clause of 25 U.S.C. § 1302(8) is a sufficient basis in the law for the right asserted by plaintiffs. We agree with the opinion of Judge Nichol in *Williams v. Sisseton-Wahpeton Sioux Tribal Council*, 387 F.Supp. 1194 (D.S.D.1975) wherein he stated:

> This court recognizes the dangers of succumbing to ethnocentrism in applying the Indian Civil Rights Act, but believes, nevertheless, that at the very core of due process is the proposition that a governing body must abide by and be governed by its own constitution and ordinances adopted pursuant to that constitution. *Citing Solomon v. LaRose*, 335 F.Supp. 715, 722 (D.Neb.1971); *McCurdy v. Steel*, 353 F.Supp. [629 (D.Utah 1973)] at 634. To say that enforcement of the above proposition would somehow impose elements of an alien culture upon the Indians is, in this Court's opinion, incorrect.

We see this case as a set of facts to which the proposition advanced by Judge Nichol ought be applied. Plaintiffs, as members of the tribe, have an interest in the economic aspects of the tribal council's decisions. It is their belief that the debt cancellation complained of will be particularly advantageous to certain council members and disadvantageous to others. Plaintiffs seek to protect their interest by submitting the council's decision to the tribal electorate. This Court holds that due process encompasses the right in this case to demand such a referendum.

Defendants assert that the debt cancellation was a business decision, not a legislative action, and that Article VII, *supra*, providing for a referendum upon demand of 300 qualified voters pertains only to legislative actions. We find that argument to be without merit. Article VII provides that a referendum "may be demanded on *any enacted or proposed ordinance or resolution* of the Cheyenne River Sioux Tribal Council" (emphasis added). No distinction is made between legislative actions and business decisions.

### III.

### CONCLUSION

This Court concludes that plaintiffs have a right to a referendum. This does not mean that this Court has any opinion whatever on the wisdom and propriety of the debt cancellation; that decision is wholly a tribal matter. All this Court decides is that the denial of a referendum as demanded pursuant to Article VII of the Cheyenne River Sioux Tribal Constitution is a violation of due process as guaranteed by 25 U.S.C. § 1302(8).

The foregoing shall constitute this Court's findings of fact and conclusions of law, and a judgment will be entered in accordance therewith.