No. A-CV-22-82

COURT OF APPEALS OF THE NAVAJO NATION

September 3, 1982

Franklin NEZ, et al., Appellants,

vs.

Frank BRADLEY, et al., Appellees.

OPINION AND ORDER

Robert C. Ericson, Esq., Michael C. Nelson, Esq., DNA-People's Legal Services, Window Rock, Navajo Nation (Arizona), for Appellants, and Gary Verberg, Esq., Department of Justice, Window Rock, Navajo Nation (Arizona), for Appellee.

I.    THE CASE BEFORE THE COURT

This ruling is made on a substituted motion for equitable relief made by the appellants and a motion to dismiss appeal made by the appellees. This appeal was filed the afternoon of August 31, 1982, and the court denied an initial motion for equitable relief pending appeal with leave to renew the motion at a hearing with all parties present. A motion to dismiss the appeal was filed the morning of September 3, 1982, just before a hearing scheduled for 9:00 a.m. that day. Because this case involves claims that the appellants will be injured in such a way they will have no means of obtaining legal relief, the court permitted a hearing on short notice and is making a speedy decision.

This case involves the complaint of 18 Navajo construction workers who brought a complaint before the Division of Equal Opportunity and Employment (also known as the Office of Navajo Labor Relations; "Board/Office") about a contract between the Navajo Tribe, through the Division of Resources, and A & M Building Systems, Inc. of Clovis, New Mexico, which is far outside the boundaries of the Navajo Nation.
On August 25, 1982 the Division of Equal Opportunity, under the name Office of Navajo Labor Relations, made a written interim decision, reserving jurisdiction to make a final ruling after a full hearing. (The court is advised the full hearing will commence at 3:00 p.m. on the date of this decision).
The Division/Office found that the Division of Resoures entered into a "sole source" contract with A & M Building System under a "waiver of Tribal bidding procedures," which bypassed normal bidding procedures, and that when work was begin A & M had eight workers

to build the structure under contract, six of whom were non-Navajo and two of whom were Navajo. The interim decision contained four decisions regarding the applicability of regulations of the Office of Navajo Labor Relations:

1. The workers had a right to complain because everyone consented to proceedings to resolve the problem;
2. Everyone had received proper notification of proceeding before the Division;
3. Even if "sole source" contracting and a waiver of bidding requirements are valid, there can be no waiver of Navajo preference in employment for such projects; and
4. There was noncompliance with the applicable regulations because:

    a. There was no assurance of contractor's reports on Navajo employment;

    b. The parties entering into the contract disregarded a written request by the Division/Office to review the contract, reports and current and proposed construction for the purposes of employment goal determination;

    c. The contract did not contain languages to insure the contractor will comply with manpower regulations, nor did it require the contractor to comply with the general labor relations guidelines;

    d. There was noncompliance with prevailing wage requirements, and minimum wages were paid; and,

    e. All applicable Office of Navajo Labor Relations guide-lines were held to apply to the job.

The Division/Office then went on to note that because there were no reviews by it prior to the commencement of work in order to assure Navajo employment goals were met, and because the contract did not require obedience of Navajo Manpower Utilization Requirements, it could not enforce the contract and give a full remedy for the noncompliance items it found. The remedy granted by the Board of the Division/Office was that the contractor would be required to hire six additional Navajo laborers at the prevailing contract labor rate, and the two Navajo workers already on the job would have to be paid the same rate.

The findings admitted that the orders entered would not obtain full compliance with the requirements of the Division/Office, claiming that the factual circumstances limited their ability to do so.

After the decision the workers filed their action in the Court of Appeals, claiming that the board failed to use the full authority under its own regulations to enforce Navajo preference law, and that it failed to consider the remedy of back pay for the Navajo workers already on the job. The appellants also claimed the "highest prevailing contract labor rate" determined by the board was far below the rate set by the U.S. Department of Labor and relied upon under Navajo law.

The appellants knew of the precise progress of the work under the contract (a building at the Navajo Nation Fairgrounds at Window Rock), and they knew the contract completion date of September 3, 1982. (It is somewhat puzzling to the court that a contract which was signed on June 21st and which was known to the public to be a project to be completed by the Navajo Fair in September would not have been

challenged by the workers until they file their complaint on August 19th, almost two months later. This certainly complicates the case before the court).

The Navajo workers came to this court today and asked for an order which is deceptively simple on its face. They say that it is clear there have been violations of clear and mandatory Navajo preference laws, that the Division/Office violated its own regulations, that there is a liklihood they will prevail in their claims for back pay and other relief and that unless there is some assurance money will be set aside to pay their claims, they will have no relief. Therefore the workers ask that this court tie up $49,814 which will be payable to A & M Building Systems in the next few days by ordering the Board of the Division /Office to require a bond from A & M in that sum or ordering the Board to require the withholding of the sum, which is a final payment.

To all this the appellees simply say that a full hearing had been scheduled before the Board on the date of the hearing before the court, and the workers have failed to complete the remedies that are already available to them.

## II.    JURISDICTION

When the court made its initial September 1st ruling on the motion to tie up the money, it warned the appellants that there were serious questions about the jurisdiction of this court. When they returned to court, they presented a very clear and well researched brief on the point.

The initial basis for jurisdiction relied upon by the appellants is a regulation purporting to give this court jurisdiction over appeals from the appellee board. Sec. II(N)3, Guidelines for the Establishment of Navajo Manpower Utilization Requirements. They say that were it not for the express terms of that regulation, they would have pursued other methods of obtaining relief in district court. In their renewed motion the appellants urge the court to find there is jurisdiction under a portion of the Indian Civil Rights Act (25 U.S.C. Sec. 1302(8 )), a section of the Navajo Bill of Rights (1 NTC Sec. 8), and under 7 NTC Sec. 255, which they say gives the Court of Appeals the authority to issue orders against officials (mandamus) in order to preserve jurisdiction.

### A.    JURISDICTION UNDER THE GUIDELINES FOR ESTAB-LISHMENT OF NAVAJO MANPOWER UTILIZATION REQUIREMENTS

It is clear that the workers relied upon the regulation which says this court has jurisdiction under these kinds of cases. The court was unable to find out who wrote the regulation they relied upon or what the rationale of the author was when he or she graciously gave this court jurisdiction. The guidelines appear to be a lawyer's document, but it is very clear that administrative agencies cannot simply grant jurisdiction to a court.

It is unfortunate that sometimes people come before a court with a serious problem to be taken care of, only to find that the court they have picked is the wrong one because it does not have the proper authority to act on their case. This is such a situation, and these

workers have chosen a court which does not have the power to rule on their claims.

Appeals courts, unlike trial or district courts, are limited in the kinds of cases they hear. They usually get their authority to act from a constitution or a statute, and they are limited to the powers expressly set forth in those laws. There is not a constitutional right to appeal, and appeals can be carefully limited. Baltimore and Potomac Railway v. Grant, 98 U.S. 398 (1878). Within the Navajo Nation, the jurisdiction of the Court of Appeals is fixed, limited and expanded only through the action of the Navajo Tribal Council. The Council has only given this court the right to hear appeals from the judgments and orders of the Tribal Court of the Navajo Nation. 7 NTC Sec. 302.

The appellants carefully considered this observation in the earlier order, and direct the court's attention to the case of Nakai v. MacDonald, 1 Navajo R. 107 (Ct. App. 1975). In that case this court accepted jurisdiction over an election dispute because of the Rules for Election Contests of the Board of Election Supervisors which vested jurisdiction upon this court. Id., 108. Unfortunately that does not give the appellants firm ground to stand upon, because the Court of Appeals also noted that the particular rule was based upon 11 NTC Sec. 52, which states:

> "The Board of Election Supervisors shall have authority to make and enforce rules and regulations not inconsistent with this chapter concerning any matter within the jurisdiction of such Board. Such regulations shall have the force and effect of a law of the Navajo Tribe."

The last sentence of that statute is the one which makes the difference, since the Council delegated broad powers of lawmaking to the Board of Election Supervisors. At oral argument in this matter, the court asked counsel for both sides what precise statutory authority there is for the regulation relied upon for jurisdiction here, and the court did not receive any reply which indicated there may be a section of the Navajo Tribal Code or some other legislative resolution which, as in the Nakai case, would give firm foundation for this court to act.

Therefore there is no other conclusion this court can reach but that it has no jurisdiction under the regulation and the appellants were mislead to rely upon an agency act which was not sanctioned by law, i.e. passing a regulation which it did not have the authority to pass.

B. JURISDICTION UNDER THE NAVAJO BILL OF RIGHTS AND THE INDIAN CIVIL RIGHTS ACT

In examining these claims it is important to distinguish between laws which give rights and laws which give the courts the authority to hear claims those rights are violated and give a remedy for such violations. Both the Navajo Bill of Rights and the Indian Civil Rights Act give protection for certain civil rights and liberties. Neither of those laws fixes jurisdiction. It cannot be said that the Indian Civil Rights Act gives any new jurisdiction to tribal court, because tribal court jurisdiction comes from the sovereignty of the tribe or nation which establishes the court. Iron Crow v. Oglalg Sioux Tribe of the Pine

Ridge Reservation, 231 F.2d 89, 94 96 (C.A. 8, 1956). The Indian Civil Rights Act is a change in tribal substantive or "rights giving" law. Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978). Likewise, the Navajo Bill of Rights created new rights and did not enlarge or reduce the power to hear claims of violations of law in this court.

The case of Boe v. Fort Belknap Indian Community clearly demonstrates that there is a vast difference between a law creating a right and ones giving the jurisdiction or a means to enforce that right. 455 F. Supp. 462, 464 (D. Mont. 1978). As was pointed out in Halona v. MacDonald, the Indian Civil Rights Act can cause the removal of a barrier to judicial review, but the power to review the conduct of government officials is far different from having the jurisdiction to do so. 1 Navajo R. 189, 204 (Ct.App. 1978). It is true that "Where federally protected rights have been invaded, it has been the rule from the beginning that the courts will be alert to adjust their remedies so as to grant the necessary relief." Bell v. Hood, 327 U.S. 678 (1946). It is also true that "The existence of a statutory right implies the existence of all necessary and appropriate remedies." Sullivan v. Little Hunting Park, Inc. 396 U.S. 229, 239 (1969). However the right must be enforced in the proper court.

The Navajo Court of Appeals is a court of limited jurisdiction, while the District Courts of the Navajo Nation are courts of general jurisdiction, with the ability to enforce these laws. The laws themselves do not give this court the authority to act.

## C.  MANDAMUS JURISDICTION

The appellants urge the court to found its jurisdiction on 7 NTC Sec. 255. That statute is also one which is not jurisdictional. It gives the Tribal Court (not the Court of Appeals) the authority to issue orders, including mandamus relief, to carry out its jurisdiction. That statute itself recognizes that jurisdiction is founded on a separate statute or series of statutes. The appellants have chosen the Court of Appeals for a remedy, and while this court can issue orders to preserve its own jurisdiction, it does not have the authority to assume mandamus jurisdiction reserved for the district courts. In the Matter of the Appointment of Tuba City Prosecutor, 1 Navajo R. 168, 176 (Ct. App. 1977).

## D.  OTHER REMEDIES

It should not be assumed that since the appellate review regulation involved in this case is invalid that the Courts of the Navajo Nation cannot review the work of administrative agencies. This court accepts the principle that courts are reluctant to not review administrative agency actions without a very good reason to do so. Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 141 (1967). In particular, where there are constitutional claims to be considered (and this court considers Navajo Bill of Rights Claims and Indian Civil Rights Act claims to be "constitutional" in nature), the Navajo courts will hear them. Ralpho v. Bell, 569 F.2d 607 and 621 (C.A.D.C. 1977); Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Serv., Inc., 570 F.2d 660 (C.A.7, 1977); Moore v. Johnson, 582 F.2d 1228

(C.A.9, 1978).

This court has of course already held that the Navajo courts have review authority over Navajo administrative agencies. Brewster v. Bee & Benally, 1 Navajo R. 128, 120 (Ct. App. 1977).

However, although the Navajo courts have jurisdicton over agency action, that review is done by means of decision by the trial court and then appeal to this court. This court does not have the initial, first or primary authority to hear the matter.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Normally this court would stop at this point in discussing the legal problems of this case, but since the appellees have raised the question of exhaustion of administrative remedies and since that problem may crop up before the district court, it should be addressed now.

The appellees are of course correct that the Navajo law is that the courts will not act on a claim unless every remedy provided by a statute or proper regulation has been pursued to its conclusion. Begay v. Board of Election Supervisors, 2 Navajo R. 120, 125 (Ct. App. 1979).

However the law is not that simple. As was noted in the 1946 decision of Aircraft & D. Equipment Corp. v. Hirsch,

> "It is true that the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and of threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention." 331 U.S. 752, 773 (1946).

As noted above, for the purpose of actions by the Navajo Courts a violation of the Navajo Bill of Rights or the Indian Civil Rights Act will be deemed to be a "constitutional question" for the purpose of this rule. It is fundamental that "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." Morton v. Ruiz, 415 U.S. 199, 235 (1974). Further, a constitutional kind of right can arise from an agency's failure to follow its own laws and regulations, because

> ". . .at the very core of due process of the proposition that a governing body must abide and be governed by its own consti-tution and ordinances adopted pursuant to that constitution." Williams v. Sisseton-Wahpeton Sioux Tribal Council, 387 F. Supp. 1194, 1199 (D.S.D. 1975).

These principles of course apply to Navajo agencies, and a failure to follow an agency's laws or regulations can give rise to a "constitutional" kind of claim if they are serious and obvious, and such a claim coupled with a showing of the inadequacy of administrative relief and irrepar-able injury would certainly be cause for a court with jurisdiction to act before available remedies are exhausted.

The rights these workers are asserting are certainly civil rights.

15 NTC Sec. 202 establishes the purposes of the Division of Equal Opportunity and Employment and gives Navajo workers certain rights. 15 NTC Sec. 204 sets down mandatory duties for the Board of Directors of the Division of Equal Opportunity and Employment, including:

-Insuring preferential treatment of Navajo by employers;
-Enforcing preferential treatment by appropriate means;
-Requiring reporting by employers;
-Approving agreements with the Navajo Nation as to employment;
-Requiring minimum contract provisions;
-Hearing complaints about Navajo preference;  and
-Doing everything necessary to bring about preferential employment of the Navajo.

Civil rights are no less important than constitutional rights, and the Navajo preference statutes are ones which confer important rights on individual members of the Navajo Tribe.

The appellants posed a question which may or may not be resolved by the hearing before the Board today, but upon the facts presented by the appellants, but for the jurisdiction problem, they would have exhausted their remedies.

III.    ORDERS

1.    This court having no jurisdiction over the matter posed, this appeal is hereby DISMISSED;

2.    The appellant's motion for equitable relief is DENIED, without prejudice to the seeking of relief in a proper forum;  and

3.    The appellee's motion to dismiss the appeal is DENIED.